STATE OF KANSAS, *Appellee*, v. ARNOLD L. BAKER, *Appellant*.

No. 58,474

STATE OF KANSAS, *Appellee*, v. ARTHUR L. COLEMAN, *Appellant*.

(720 P.2d 1112)

Opinion filed June 13, 1986.

*Eric Stahl,* assistant public defender, argued the cause and *Linda C. McMaster,* assistant public defender, was on the brief for appellant Arnold L. Baker.

*Kim D. Steele,* of Wichita, was on the brief for appellant Arthur L. Coleman.

*Geary N. Gorup,* assistant district attorney, argued the cause and *Clark V. Owens,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

HOLMES, J.: Arthur L. Coleman and Arnold L. Baker appeal their convictions in a joint trial of one count of aggravated robbery (K.S.A. 21-3427). Although separate appeals were perfected by each appellant, the cases have been consolidated for argument and opinion in this court. The appellants raise several common issues and, in addition, Baker raises issues relating to the admission in evidence of statements made by his codefendant Coleman and the instructions given the jury.

Each appellant had originally been charged with two counts of aggravated robbery. Count I of the original complaint charged Tyrone J. Long, Arnold L. Baker, and Arthur L. Coleman with one count of aggravated robbery of a liquor store in Wichita on December 11, 1984. Count II charged the same three individuals with a second count of aggravated robbery which was alleged to have occurred on the same date at the Ken-Mar Amoco gas station located at 13th and Oliver Streets in Wichita. Long was granted a separate trial. Appellants Baker and Coleman, in a joint trial, were acquitted of Count I; therefore, only the facts surrounding the robbery of the gas station need be set forth.

On the evening of December 11, 1984, Paula Wendler was

working at the Ken-Mar Amoco station. Around 11:30 p.m. she was approached by two black males and robbed at gunpoint. As the robbers fled, Wendler telephoned the police and reported the robbery. At the time of the robbery, Wichita Police Officers Bradley S. Agnew and Max Tenbrook were parked in separate patrol cars, several blocks from the gas station, discussing a call to which they had just responded. When the two officers heard the gas station robbery dispatch they responded, each traveling different side streets en route to the robbery location. While proceeding to the Amoco station, Officer Agnew encountered a white two-door Chevrolet Cavalier approaching from the opposite direction. As the vehicles passed one another, Agnew shined the alley light from his patrol car on the white Chevrolet and observed the car to be occupied by three black males, each dressed in dark clothing. Based on the dispatcher's description that the robbers were two black males dressed in black jackets and wearing blue jeans, Officer Agnew turned his patrol car around intending to stop the Chevrolet and check its occupants. Meanwhile, after passing the squad car, the Chevrolet turned at the next intersection, proceeded a short distance, and parked at the curb with its lights out. Officer Agnew pulled his squad car up behind the white Chevrolet, turned on his emergency equipment, and instructed the occupants to get out of the car. At trial Agnew identified the appellants as two of the men who had exited the Chevrolet. As the three men vacated their vehicle, leaving both front doors standing open, Officer Tenbrook arrived and proceeded to pat them down and then handcuffed them. As the three men were being handcuffed, Officer Agnew looked inside the Chevrolet from the driver's side and saw one $10.00 bill laying between the seat and the door. He walked around to the passenger's side of the vehicle and observed a large wad of money stuffed under the passenger seat and the barrel of a firearm protruding from underneath the seat. All of these items were in plain view of the officer who was outside the automobile. The men were then arrested, advised of their *Miranda* rights and briefly interrogated at the scene. All three of the men were transported, in separate vehicles, to the Amoco station, where the attendant could positively identify only Tyrone Long as a perpetrator of the robbery. (Long was tried and convicted in a separate proceeding and is not a party to this appeal.) At trial,

however, she was also able to identify Arnold L. Baker as the other robber who entered the Amoco station. Baker and Coleman were convicted of robbing the Amoco station and this appeal followed.

Appellants filed a motion in the trial court to quash their arrests and to suppress all evidence obtained incident thereto. Following a hearing the motion was overruled by the trial court. The principal arguments raised by the appellants constitute a cluster of issues in which they claim the initial stop, their arrest, the search of the vehicle and the admission of testimony and physical evidence were all improper under the Fourth Amendment protections from "unreasonable searches and seizures."

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." The amendment protects people, not places, and is aimed at the preservation of the individual's reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347, 351-53, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). This expectation of privacy includes automobiles under appropriate circumstances. *United States v. Hensley*, 469 U.S. 221, 83 L. Ed. 2d 604, 105 S. Ct. 675 (1985). The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975). "[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In the landmark case *Terry v. Ohio*, 392 U.S. 1, the Supreme Court recognized a limited exception to the probable cause and warrant requirements of the Fourth Amendment. In *Terry* a police officer had observed suspicious or unusual conduct by the defendant and two other men. Concluding that the suspects were contemplating a robbery, the officer stopped and frisked them and found they were carrying weapons. On appeal the defendant claimed the stop and frisk conducted by the police officer violated the Fourth Amendment. After thoroughly discussing the factors to be considered in resolving the issue, Chief Justice Warren, writing for the court, acknowledged that a "narrowly drawn" exception to the Fourth Amendment probable cause

requirement existed under the circumstances. The court held that the search was reasonable in view of Fourth Amendment prerequisites, and that the guns which had been seized were properly admitted at trial. The court stated that prior to stopping the defendant, the officer had a reasonable belief that criminal activity was afoot and that the persons might be armed and dangerous. The court went on to propound a two-faceted approach for assessing the reasonableness of an investigative stop which falls short of a full arrest. The determination must be made, (i) whether the officer's conduct was justified at its *inception*, and (ii) whether it was "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20.

In *United States v. Cortez*, 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981), the court examined the quantum of evidence necessary to support a stop by police, stating:

"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." 449 U.S. at 417-18.

In Kansas, the guidelines for investigative stops are set forth in K.S.A. 22-2402(1), which provides:

"**Stopping a suspect.** (1) Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions."

Thus a stop and frisk under *Terry* and K.S.A. 22-2402 requires that the officer have a reasonable and articulable suspicion, based on facts known to him or her prior to the stop, that the individual stopped has committed, is committing, or is about to commit a crime. In *State v. Epperson*, 237 Kan. 707, 703 P.2d 761 (1985), Justice Miller thoroughly reviewed numerous Kansas cases applying the statutory and constitutional limitations to a stop and frisk encounter and we will not repeat here what was so eloquently stated therein.

Basically, it is the position of the appellants that the facts known to Officer Agnew were insufficient to constitute the basis

for a reasonable and articulable suspicion that the appellants had committed, were committing or were about to commit a crime. If the facts are insufficient to meet the constitutional and statutory requirements for the initial detention, then the physical evidence of money and a firearm, together with the statements of the three individuals and any other evidence drived therefrom, are alleged to be inadmissible as evidence under the fruit of the poisonous tree doctrine as promulgated in *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963).

Were the facts known to Officer Agnew sufficient to support the trial court's finding that he possessed the reasonable suspicion necessary to stop and detain the appellants and Long? We think they were. Officers Agnew and Tenbrook were approximately sixteen blocks from the scene of the armed robbery when the dispatch reporting the robbery came over the police radio. The initial broadcast stated the robbery was committed by two black men dressed in black jackets and blue jeans. The officers then proceeded toward the scene of the robbery, each using a different route in anticipation that the robbers might be encountered fleeing the scene. Although the report was of two robbers, with no indication of how they made their getaway, it was not unreasonable for the officers, who were assigned to patrol duty in the area and were familiar with it, to anticipate that the robbers fled in a waiting automobile with a third person acting as the wheelman. It was nearly midnight when the robbery occurred and Officer Agnew was approaching the scene through a quiet residential area. When Officer Agnew approached the oncoming Chevrolet, he determined he would check the occupancy of the automobile with his alley light, clearly evidencing his suspicion that the fleeing robbers might elect as an escape route the streets being traversed by the officer. As the officer passed the Chevrolet automobile, he shined his alley light upon the occupants and determined the automobile contained three black men dressed in dark clothing. Agnew had encountered no other traffic en route to the robbery scene and, based on the information he possessed and his training and experience as a police officer, he made the decision to check the automobile and its occupants further.

The Chevrolet automobile proceeded to the next intersection, turned into the intersecting street and then was parked at the

curb with the lights out. As the officer approached from the rear, the lights on the Chevrolet were turned on in preparation for leaving the scene. It was at this time that the officer turned on his emergency equipment and ordered the occupants out of the vehicle. As they exited the vehicle it was obvious that all three were dressed in dark clothing and that at least two of them were dressed in black jackets and blue jeans. The police dispatch had warned of an armed robbery and the officers were aware the suspects might be armed. Based upon the totality of the circumstances—the whole picture as stated in *Cortez*—we are of the opinion the information available to Officer Agnew, when coupled with the officer's background, training and experience, was sufficient to raise a reasonable suspicion that the appellants and Long may have committed the robbery. We hold that Officer Agnew possessed sufficient facts and information, as required by K.S.A. 22-2402(1) and *Terry*, to stop and frisk the appellants.

While the appellants were lawfully stopped Officer Agnew observed the money and a firearm which were in plain view in appellants' automobile. At that point, the officers had probable cause to arrest the appellants without a warrant. *State v. Niblock*, 230 Kan. 156, 631 P.2d 661 (1981); *State v. Coe*, 223 Kan. 153, 574 P.2d 929 (1977). Having determined that the initial stop and subsequent arrest were legal, we hold appellants' motion, to quash their arrest and suppress the evidence obtained incident thereto, was properly overruled.

The next issue raised by both appellants is that the trial court erred in denying their motion for judgment of acquittal based upon insufficient evidence. Without detailing the additional evidence presented at trial, what has already been said is sufficient to sustain the convictions. In a criminal action, when the defendant challenges the sufficiency of the evidence to support a conviction, the standard of review on appeal is whether the evidence, viewed in the light most favorable to the prosecution, convinces the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. The appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of a charge are sustained. *State v. Pink*, 236 Kan. 715, 696 P.2d 358 (1985). Appellants' arguments on this issue lack merit.

We now turn to the separate issues raised by appellant Baker.

As his first separate issue, he contends it was reversible error for the trial court to admit in evidence the inculpatory oral statements of Coleman.

The Sixth Amendment to the United States Constitution secures the right of a criminal defendant on trial to confront witnesses against him. The protection of the Sixth Amendment is applied to the states by way of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965). The denial of a criminal defendant's right to confront witnesses against him is a denial of due process of law. In *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968), the court held that an accused's right of confrontation was violated when the confession of a codefendant, who did not testify, and which implicated the defendant, was admitted into evidence at their joint trial, even though a limiting instruction was given. See *State v. White & Stewart*, 225 Kan 87, 587 P.2d 1259 (1978). *Bruton* rights are violated only by admission of extrajudicial statements *implicating* the accused codefendant. *State v. Pink*, 236 Kan. at 727. In *Pink* we held that when the extrajudicial statement admitted does not directly allude to the accused codefendant, and a limiting instruction is given, no rights are abridged. *State v. Pink*, 236 Kan 715, Syl. ¶ 5.

In the present case Baker complains about Officer Agnew's testimony regarding conversations with codefendant Coleman. Agnew testified concerning Coleman's account of the defendant's activities on the evening of the robbery. Baker also argues that testimony from investigating detective Mervosh, concerning the defendant's own statements, was improperly admitted. A review of the testimony in question indicates that *Bruton* is inapplicable for several reasons. Neither statement in the present case is a confession by a codefendant, or a statement implicating appellant Baker. Coleman's remarks to Officer Agnew were totally exculpatory in nature. Further, the crux of Baker's complaint regarding Detective Mervosh's testimony centers on his own remarks, not those of Coleman. In the present case the trial court cautioned the jury that statements of one defendant are admissible only against the declarant and not against the codefendant. The court also instructed the jury that they should give consideration to the guilt or innocence of each defendant. It can be assumed that the jury followed the cautions and instructions

of the court, and that no error occurred. *State v. Pink*, 236 Kan. at 728.

Finally appellant Baker attacks certain instructions given by the trial court. The court instructed on the elements of the crime of aggravated robbery as follows:

"Defendants are charged with the crime of aggravated robbery on two occasions. Each defendant pleads not guilty.

"To establish the charge, each of the following claims must be proved.

Defendant, *or someone acting in concert with him*:

1. Intentionally without permission took property of another from the presence of another person,
2. by threat of bodily harm to the person,
3. while armed with a dangerous weapon; and,
4. This occurred in Sedgwick County, Kansas; and, on or about December 11, 1984.

In count I the "person" referred to is Sylvia Long.

In count II the "person" referred to is Paula Wendler.

A handgun is a dangerous weapon." (Emphasis added.)

The court also instructed the jury on aiding and abetting, as follows:

"Liability for crimes of another: (1) a person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime; (2) a person liable under subsection (1) hereof is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by such person as a probable consequence of committing, or attempting to commit, the crime intended; (3) a person liable under this section may be charged with, and convicted of, the crime although the person alleged to have directly committed the act constituting the crime lacked criminal capacity or has not been convicted, or has been acquitted, or has been convicted of some other degree of the crime, or of some other crime based on the same act.

"Mere presence at the scene where a crime is committed, does not, in and of itself, make a person guilty of having committed the crime."

In his brief, Baker contends the phrase "or someone acting in concert with him" contained in the aggravated robbery instruction is ambiguous and not capable of ordinary understanding and therefore misled the jury. Appellant Baker also contends that separate instructions should have been given for each count alleged in the information or complaint. We find both arguments are without merit.

The judgment in each case is affirmed.