No. 65,897

STATE OF KANSAS, *Appellant*, v. TRENTON LEIGH MCKEOWN, *Appellee*.

(819 P.2d 644)

Opinion filed October 25, 1991.

*Keith E. Schroeder*, assistant county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellant.

*Steven R. Zinn*, deputy appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, and *Shelly Wakeman*, legal intern, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals from the district court's order suppressing the evidence and dismissing a complaint charging the defendant with one count each of felony possession of marijuana (K.S.A. 1990 Supp. 65-4127b) and possession of drug paraphernalia (K.S.A. 65-4152).

On April 13, 1990, Officer Rick Rhodenbaugh, of the Reno County Sheriff's Department, was patrolling rural Reno County in his marked patrol car. At 9:11 p.m., he received a dispatch to check a vehicle in the area of Valley Pride Road and Morgan Avenue. An individual had reported an older model green pickup parked in the area but did not want to be contacted again by the police about the vehicle. The only information received about the vehicle was that it was an older model green pickup, that it was in the immediate area of where the reporting party lived, and that this party was unfamiliar with the vehicle and could not determine by driving by what the vehicle was doing at this location.

Valley Pride Road runs north and south, while Morgan Avenue runs east and west. This is an intersection of two sand or gravel

township roads in an agricultural area. No one lives at the intersection, and there are no structures there. At 9:11 p.m., it was dark with no street lights in the vicinity.

Seven minutes after being dispatched, Officer Rhodenbaugh approached the intersection from the east on Morgan Avenue. As the officer approached the intersection, he observed the tail-lights or brake lights of a vehicle in front of him just west of the intersection. This vehicle was either stopped or moving very slowly and appeared to be stationary, sitting alongside another vehicle whose headlights came on facing the officer.

This vehicle had been sitting with its lights off on the south side of the gravel road facing east. The vehicle was as far off the road as the shoulder would allow. Officer Rhodenbaugh testified: "I believe it was partially on the roadway. It is possible it had pulled off onto the edge of the grass, but there wouldn't have been probably enough room for it to park in the ditch." The first vehicle left in a westbound direction on Morgan Avenue before the officer arrived at the scene. The second vehicle drove east on Morgan Avenue toward the intersection and then turned south on Valley Pride Road. At that time the officer could see that this second vehicle was an older model green GMC pickup. He stopped the vehicle "as being the vehicle that I was supposed to check on in the area." The officer testified that "the car was not doing anything wrong" when he stopped it.

Officer Rhodenbaugh approached the driver's side of this vehicle, finding the window rolled halfway down. The officer detected the odor of burning marijuana as he spoke with the driver, who was the sole occupant and who identified himself as the defendant. When he asked defendant to get out of the vehicle, he saw an open Budweiser beer container and placed defendant under arrest for illegal transportation of liquor. While patting down defendant, the officer found a baggie containing green vegetation, which was later determined to be marijuana, in defendant's pocket. In searching defendant's truck, the officer found a brass "one-hitter pipe" and zig-zag rolling papers. He also found the burnt ends of marijuana cigarettes, or "roaches," in the ash tray. Neither the drug paraphernalia nor the roaches were observed prior to the search of the vehicle.

On October 19, 1990, at a hearing on defendant's motion to suppress the evidence, the court, relying on *State v. Kirby*, 12 Kan. App. 2d 346, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988), granted defendant's motion to suppress. In doing so the district judge noted that the only issue of concern was whether the officer had a reasonably articulable suspicion of criminal activity when he stopped the vehicle. The court stated:

"It is my understanding from the evidence, the testimony of the officer, and I think it is clear from his testimony that the only reason he stopped this vehicle is, is because it matched the description given to him by dispatch. There is no other reason that he stopped it. There was no reason to believe there was any criminal activity. I don't think it is unlawful for a car to be parked on the side of the road with its lights off. I don't believe it's unlawful for two cars to be parked side by side visiting or whatever was going on. The officer saw nothing that would suggest any type of criminal activity. He testified that when the defendant's vehicle turned the corner, he saw it to be one that matched the description of the dispatch, and that is why he stopped it. Whether it was described to the officer as check vehicle or suspicious vehicle, I don't think that implies criminal activity. I think that says to the officer, get out there and see what is going on. Now, I don't know that the stop is illegal. I think the officer can stop and find out what the defendant was doing, but once he does, I think he has to recognize that any evidence received from this stop, you know, is unconstitutionally seized. . . . I think this case falls within *Kirby*. The officer can stop that vehicle if he has a reasonable suspicion that there is criminal activity. There is no criminal activity that was known to the officer or any reason to believe there was any criminal activity. The only reason for the stop was because it matched the description from dispatch, the vehicle did, and that is not enough. That is not, that does not amount to reasonable suspicion of criminal activity. I am going to sustain the motion."

The State concedes that the prosecution hinged upon the availability of the evidence that had been suppressed and that without that evidence the case should be dismissed. The State reserved its right to appeal the decision. The journal entry documenting the suppression of the evidence also entered a dismissal of the case. The State appealed from this decision.

The sole issue raised by the State in this appeal is whether Officer Rhodenbaugh, based upon the evidence presented at the suppression hearing, had a reasonable and articulable suspicion to stop the defendant. The State contends that Officer Rhodenbaugh was justified in stopping the defendant pursuant to K.S.A. 22-2402(1). K.S.A. 22-2402 is a codification of the United States

Supreme Court decision in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *Terry*, the Court held an officer may stop and frisk an individual even though the officer does not have probable cause to believe a crime has been or is being committed if the officer is able to point "to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21.

K.S.A. 22-2402 provides as follows:

"**Stopping of suspect.** (1) Without making an arrest, a law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a crime and may demand of him his name, address and an explanation of his actions.

"(2) When a law enforcement officer has stopped a person for questioning pursuant to this section and reasonably suspects that his personal safety requires it, he may search such person for firearms or other dangerous weapons. If the law enforcement officer finds a firearm or weapon, or other thing, the possession of which may be a crime or evidence of crime, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person."

An officer who does not have reasonable suspicion to justify a *Terry* stop may, however, approach an individual on the street for investigative purposes. *State v. Epperson*, 237 Kan. 707, 713, 703 P.2d 761 (1985); *State v. Marks*, 226 Kan. 704, 708-09, 602 P.2d 1344 (1979). The officer can ask the individual's name and request identification but cannot force the individual to answer. The individual is free to leave.

In *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983), the United States Supreme Court reasserted that the Fourth Amendment was not violated by a law enforcement officer's merely approaching an individual on the street or other public place, asking him questions if he is willing to answer, or putting questions to him if he is willing to listen. See *Dunaway v. New York*, 442 U.S. 200, 210 n.12, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979); *Terry v. Ohio*, 392 U.S. at 34 (White, J., concurring). The Court in *Royer* noted:

"The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. *Terry v. Ohio*, 392 U.S. at 32-33 (Harlan, J., concurring); *id.*; at 34 (White, J., concurring). He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen

or answer does not, without more, furnish those grounds. *United States v. Mendenhall*, [446 U.S. 544, 556 (1980)] (opinion of Stewart, J.). If there is no detention—no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." 460 U.S. at 497-98.

The stop of a vehicle being driven upon the streets, however, is different than merely approaching an individual in a public place. Such a stop always constitutes a seizure. Therefore, to stop a moving vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402 and *Terry. Delaware v. Prouse*, 440 U.S. 648, 661-63, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). To stop a vehicle to investigate circumstances which provoke suspicion, an officer must be aware of "specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion" that the vehicle contains individuals involved in criminal activity. *United States v. Brignoni-Ponce*, 422 U.S. 873, 884, 45 L. Ed. 2d 607, 95 S. Ct. 2574 (1975).

The State asserts that the stop of the vehicle here can be justified by two separate arguments. First, it asserts that the officer observed a crime being committed because defendant's vehicle was stopped on the road in a 55-m.p.h. speed zone with its lights off in the dark. The officer testified that it was dark when he arrived at 9:11 p.m. Therefore, lights were required if the vehicle was being operated on the highway or shoulder. Under this same argument, the State asserts that arguably a person who stops a vehicle in a 55-m.p.h. speed zone on the roadway without headlights at night is guilty of reckless driving, which includes driving a vehicle "in willful or wanton disregard for the safety of persons or property." K.S.A. 1990 Supp. 8-1566.

The problem with this argument is that Officer Rhodenbaugh did not stop the vehicle based upon his observation that defendant was committing a crime. The officer unequivocally testified at the suppression hearing that he stopped the vehicle because he thought it was the one described by the dispatcher. He specifically stated that the vehicle was not doing anything wrong when it was stopped. He *thought* that the vehicle had been parked partially on the roadway because he did not *think* enough room existed to park it in the ditch completely off the roadway. Clearly the officer's testimony that the vehicle was parked on the roadway

was based upon speculation, not articulable facts. No evidence of measurements of the truck or the shoulder area was introduced.

Second, the State argues the stop was justified because the officer had a reasonable and articulable suspicion to justify the stop as required by K.S.A. 22-2402. *Kirby*, 12 Kan. App. 2d at 352. In support of this argument, the State notes that reasonableness under 22-2402(1) is based upon the totality of the circumstances and will be viewed in terms understood by those in law enforcement. The officer making the stop must be able to articulate the basis for his reasonable suspicion. *State v. Keene*, 8 Kan. App. 2d 88, 90, 650 P.2d 716, *rev. denied* 232 Kan. 876 (1982), *cert. denied* 459 U.S. 1217 (1983). This contention is correct. See *State v. Henry*, 14 Kan. App. 2d 416, 418, 792 P.2d 358, *rev. denied* 247 Kan. 706 (1990).

The State argues that the officer found the vehicle that he was dispatched to check in the area described. This area was not near a structure or residence and was dark. According to the State's argument, the officer observed the vehicle parked on the roadway in a 55-m.p.h. speed zone without illuminating its headlights, which constitutes a reasonable and articulable suspicion. As support, the State quotes from a United States Supreme Court decision interpreting the parameters of a *Terry* stop, as follows: "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 92 S. Ct. 1921 (1972). This court included this quote in *State v. Kearns*, 211 Kan. 158, 160, 505 P.2d 676, *cert. denied* 414 U.S. 841 (1973), which approved an officer's stop of a white over blue Cadillac getaway car used following the theft of some shoes from a local shoe store. 211 Kan. at 159. To justify a stop, however, involvement in some kind of criminal activity must be suspected. None was reported here.

The State discusses several Kansas appellate court decisions to support the stop. In *Kirby*, the Court of Appeals recognized that the location, time of day, previous reports of crime in the area, and actions of a suspect may justify an investigatory stop. 12 Kan. App. 2d at 353. Although none of the individual facts cited in

*Kirby* constituted reasonable suspicion, all of the facts taken together supported the trial court's finding that the deputy had a reasonable and articulable suspicion to justify the stop. 12 Kan. App. 2d at 354. The deputy who initiated the stop was aware of reports of deer poaching in the area, came upon a pickup truck parked on a rural road with its lights out, and noticed that something was in the truck bed covered by a tarp. The court found this sufficient to stop the defendant and inquire about the individual's reason for being in that area. 12 Kan. App. 2d at 354.

Here, by the time the officer arrived, the vehicle was not stopped but instead was proceeding down the road in a lawful manner. Neither the rural location nor the time (just after 9:00 p.m.) provides suspicion to an officer. The officer had no reports of previous crime in the area and saw no furtive actions by the driver that would justify the stop. The facts here are clearly distinguishable from those in *Kirby*.

In *State v. Marks*, 226 Kan. 704, the officer approached a stopped automobile that contained two young men who matched the general description of two men described in an earlier police dispatch and wanted in connection with criminal activity. The court found that no seizure occurred in the officer's initial contact because under those facts the officer had the right to approach and question the individuals during the course of a criminal investigation. 226 Kan. at 709-10. In reaching this decision, the court relied upon previous Kansas Supreme Court cases that allow a police officer to approach to investigate possible criminal behavior even though no probable cause exists to make an arrest. 226 Kan. at 710 (citing *State v. Holthaus*, 222 Kan. 361, 363-64, 564 P.2d 542 [1977], and *State v. Boone*, 220 Kan. 758, 556 P.2d 864 [1976]). When the officer in *Marks* approached the vehicle he observed a gun, which the court found admissible under the plain view doctrine. 226 Kan. at 710. Once again, the facts here are distinguishable. The reasonable suspicion of the officer in *Marks* was based upon an earlier police dispatch giving the general description of two individuals who were connected with criminal activity. Here, the dispatcher never suggested that the vehicle in question was related to criminal activity.

The facts of *State v. Baker*, 239 Kan. 403, 720 P.2d 1112 (1986), are also distinguishable from those presented in this case. In

*Baker,* a dispatch described two black men dressed in black jackets and blue jeans wanted in connection with an armed robbery occurring about 16 blocks away from where the officer was patrolling. While approaching the scene of the robbery, the officer shined his light into a passing car and saw that it contained three black men dressed in dark clothing. As the officer approached the car, which had turned and was parked on the street, the car's lights came on as if to leave. Based upon the information the officer had received in the dispatch, combined with his background, training, and experience, the court concluded that he had reasonable grounds to suspect that the individuals in the car were connected with the commission of the robbery and, therefore, had grounds to stop and frisk them under K.S.A. 22-2402(1) and *Terry.* These facts are easily distinguishable from the case at hand where the officer had no description of any individuals but had merely been dispatched to check a vehicle parked in a rural area with no known criminal activity.

The State also relies upon *State v. Keene,* 8 Kan. App. 2d 88, to support this stop. In *Keene,* the officers stopped a car after it slowly departed from the scene of a probable illicit transaction, although they had not observed any criminal activity prior to the stop. The officers initiated the stop based upon a prior complaint one of the investigating officers received from a private citizen about possible illegal activities involving drugs or stolen property at the house next door. One of the officers observed a car with three men stop at the house. One of the men entered the house and returned with the defendant, who was carrying a small sleeping bag. The car proceeded down the street at a very slow speed. The officer stopped the car to conduct a "field investigation" or "routine traffic stop." 8 Kan. App. 2d at 88-89. When the officer approached the car, he observed two open containers of beer in plain view, and a more extensive search was conducted that revealed marijuana. The court concluded that the tip from the reliable source of possible illicit activity and the slow departure of the car after picking up someone from the suspected house constituted a sufficient basis for reasonably suspecting the occupants were involved in criminal activity and justified the stop. 8 Kan. App. 2d at 90. In contrast, here the officer had no information which indicated any kind of criminal activity related to

the car seen in the rural location. Nor did the driver of the automobile act suspicious when the officer approached.

The trial court is to determine the reasonableness of a search based upon the facts and circumstances unique to that case. *Kirby*, 12 Kan. App. 2d at 353. In reviewing a trial court's decision, an appellate court must consider whether the findings of the trial court on the motion to suppress are based upon substantial evidence. *Kirby*, 12 Kan. App. 2d at 353. This court has described substantial evidence as

" 'evidence which possesses both relevance and substance, and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion.' *Kansas Dept. of Health & Environment v. Banks*, 230 Kan. 169, 172, 630 P.2d 1131 (1981); see *Williams Telecommunications Co. v. Gragg*, 242 Kan. 675, 676, 750 P.2d 398 (1988). An appellate court must accept as true the evidence and all inferences to be drawn therefrom which support or tend to support the findings of the trial court and must disregard any conflicting evidence or other inferences that might be drawn therefrom." *Lansing-Delaware Water District v. Oak Lane Park, Inc.*, 248 Kan. 563, 572-73, 808 P.2d 1369 (1991) (citing *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 243-44, 736 P.2d 882 [1987]).

We conclude that there is substantial evidence to support the district court's rejection of the State's first argument. The area was dark when the officer approached. He saw taillights. Then he saw headlights of a second vehicle facing him that was adjacent to the first vehicle. The first vehicle left the scene, while the second vehicle approached the officer and then turned a corner. The officer testified that the vehicle was not doing anything wrong. This stop cannot be justified under K.S.A. 22-2402 on the grounds the officer observed a crime being committed.

The district court's rejection of the State's second argument is also supported by substantial evidence. Officer Rhodenbaugh was dispatched to check out a parked vehicle in a rural area. When the officer arrived, the area was unilluminated. There were no structures in that area, and the officer received no information indicating that the vehicle or its occupants were involved in any kind of criminal activity. When the officer first arrived in the area, the vehicle did not have its headlights on. Before the officer got to the scene, he observed the vehicle with headlights illu-

minated move away from the area and turn a corner. The officer did not stop the vehicle because of any wrongful conduct he observed but, instead, stopped it based upon the dispatch to check out a parked vehicle.

The officer had no reasonable and articulable suspicion to stop this vehicle. He was dispatched to find out why the vehicle was parked in this rural area. When he arrived, the vehicle was no longer parked there. Because there was no suspicion of wrongful activity, the occupant of the car should have been free to leave without the intrusion of a stop and seizure by an officer. In reviewing the decision of a trial court, this court must accept as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court, and must disregard any conflicting evidence or other inferences that might be drawn therefrom. *Leeper v. Schroer, Rice, Bryan & Lykins, P.A.*, 241 Kan. 241, 244, 736 P.2d 882 (1987). In so doing, we find substantial competent evidence exists in the record to support the district court's decision.

The judgment is affirmed.