IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,572

STATE OF KANSAS,
*Appellee*,

v.

JEREMY A. CHAPMAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court reviews a district court's decision on a motion to suppress using a bifurcated standard. The district judge's factual findings are reviewed for substantial competent evidence, and the legal conclusions drawn from the evidence are reviewed de novo.

2.

Factfinding is contrary to the function of an appellate court.

3.

On the record in this case, an anonymous tip of suspicious but not criminal activity did not support reasonable suspicion for a law enforcement car stop.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 2, 2015. Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed October 21, 2016. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.

*Samuel Schirer*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.:  This is defendant Jeremy Andrew Chapman's direct appeal from his convictions for identity theft and felony theft. We granted Chapman's petition for review from a split Court of Appeals decision affirming the district court judge's denial of a motion to suppress evidence obtained from a law enforcement car stop.

We reverse the Court of Appeals and the district court and remand to the district court for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2012, an unidentified caller to 911 reported that two individuals were walking around a Wichita model home in the middle of an extremely snowy night. The caller was unable to tell if the two had gone inside the home. The caller also said there was a black Acura Integra in front of the model home. A dispatcher relayed the information—including the address, number of individuals, and make and model of the car—to officers on patrol, treating the report as a "suspicious character" call.

Police Officers Brent Johnson and Travis Cleveland were driving separate patrol cars near the dispatched address. Each headed toward the model home. On the way, Johnson observed a dark-colored Acura Integra leaving the general area. Once Cleveland pulled up behind Johnson, Johnson stopped the Integra, despite having observed no traffic violations. Defendant Chapman was driving. As a result of the stop, the officers

2

searched the car, found evidence of identity theft and theft, and discovered that the Acura Integra was stolen.

The State charged Chapman with one count of identity theft and three counts of felony theft. Chapman filed a motion to suppress, arguing that the officers lacked reasonable suspicion to stop him.

Both officers testified at the suppression hearing.

Johnson said that he responded to a call concerning a "suspicious character which eventually changed to a burglary in progress." The dispatcher had said there were two individuals involved and had provided an address and a vehicle description, a dark-colored Acura. Johnson did not know who had called 911. As Johnson drove toward the address, he saw a dark-colored Acura driving out of the area near the address. He saw no other cars on the road. There were two occupants in the car. The car also had a 60-day license tag. Johnson knew that 60-day tags could be fabricated easily, but he did not identify anything in particular that was suspicious about the Acura's tag. He stopped the Acura once Cleveland's patrol car was traveling behind his.

Cleveland testified that he was "dispatched to a suspicious character call" and provided backup to Johnson when Johnson stopped Chapman. Cleveland also saw no other cars on the road at the time. When he pulled behind Johnson's patrol car, he told Johnson "to go ahead and initiate the traffic stop based on the suspicious character call that we were originally dispatched to since it was coming from that general vicinity." Cleveland also never saw the driver of the Acura commit a traffic infraction; rather, he participated in the stop because the car was in the general area of the reported address and matched the description from dispatch.

3

The officers approached the Acura, Johnson on the driver's side and Cleveland on the passenger side. Before Johnson could identify the driver, he heard Cleveland tell both occupants to place their hands where the officers could see them. Johnson testified that this command signaled to him that Cleveland observed a possible threat to the officers' safety, but neither officer explained the nature of any threat Cleveland had observed.

After the officers testified, the prosecutor argued that reasonable suspicion to stop Chapman's vehicle existed because Johnson had observed "a vehicle matching the description of a *burglary* in progress." (Emphasis added.) Defense counsel also made reference to a reported burglary rather than reported suspicious characters, arguing that the officers "simply stopped the car because it's in the general area and it matches what they had as a car . . . involved in this *burglary*." (Emphasis added.) Defense counsel, of course, took the position that the testimony of the officers was inadequate to support the existence of reasonable suspicion for the stop. Neither counsel focused on the anonymity of the tip or any perceived threat to the safety of the officers.

District Judge William Sioux Woolley made factual findings that the officers were responding to a suspicious character call received by dispatch in the middle of a snowy night, that the responding officers saw a car matching the make and model of the car reported in the dispatch, that the car was driving away from the area of the reported address, and that there were no other cars on the road because of the weather and time of day. The judge's factual findings did not include anything about a burglary in progress or a threat to the responding officers' safety.

The district judge distinguished the facts of the case before him from those when an officer stops a car after personally seeing something to make the officer "think that car is kind of suspicious." He noted that Johnson and Cleveland were responding to a report of suspicious behavior.

4

Ultimately, the judge "agree[d] that there was reasonable suspicion based upon the call, whether you call it a suspicious character call or suspicious criminal activity, under the minimum level for reasonable suspicion that a crime had been committed or about to be committed," and he denied Chapman's motion to suppress.

Chapman's case proceeded to jury trial before District Judge Christopher M. Magana. Chapman's counsel renewed the motion to suppress and lodged a continuing objection throughout relevant portions of the officers' testimony.

At trial, the officers testified in greater detail about Cleveland's safety concern during the stop. Johnson testified that Cleveland saw a gun in the car. Cleveland clarified that he saw a gun on the backseat floor. Both occupants were ordered out of the car. At that point, Cleveland identified the gun as a BB gun. Cleveland also testified that Chapman was not arrested because of the gun; he was arrested because of evidence of theft and identity theft discovered as a result of the stop. This evidence included a stolen driver's license, a stolen military identification card, and other stolen paperwork.

The jury convicted Chapman of all counts.

Chapman raised two issues before the Court of Appeals, one of which focused on the denial of his suppression motion.

The panel majority rejected Chapman's claim that a suspicious character tip such as that motivating the car stop was not enough to support reasonable suspicion of a crime, relying on what it described as the following facts from the record:

"(1) the officers obtained information from dispatch *concerning a burglary in progress*, (2) Chapman was driving a car closely matching the description the caller had provided to dispatch, (3) Chapman was driving near the location identified by the caller, (4)

5

Chapman and his passenger matched the number of suspects identified by the caller, (5) the car driven by Chapman was the only vehicle on the road due to harsh weather conditions, and (6) *the car driven by Chapman carried a 60-day tag that Johnson knew could be easily counterfeited*." (Emphasis added.) *State v. Chapman*, No. 111,572, 2015 WL 4758607, at *4 (Kan. App. 2015) (unpublished opinion).

Without considering the nature of the tip received, the majority concluded that reasonable suspicion existed even if it "were to disregard the fact that law enforcement was advised about a possible burglary in progress and instead treated the matter as law enforcement merely responding to a suspicious person report." 2015 WL 4758607, at *4.

The majority compared the facts of this case to the facts of *State v. Walker*, 292 Kan. 1, 11-12, 251 P.3d 618 (2011), and *City of Garden City v. Mesa*, 215 Kan. 674, 680-81, 527 P.2d 1036 (1974). *Chapman*, 2015 WL 4758607, at *4.

In dissent, Judge Michael B. Buser took issue with the majority's recitation of the controlling facts, specifically noting that the officers' suppression hearing testimony supported only a response to a suspicious persons call, not a burglary call. 2015 WL 4758607, at *6. He relied on *State v. McKeown*, 249 Kan. 506, 819 P.2d 644 (1991), which he believed to be more closely analogous to this case than the decisions cited by the majority and would have held that the officers lacked reasonable suspicion to stop Chapman because "the facts articulated by the officers at the suppression hearing demonstrate that law enforcement had no knowledge of any prior crime or any reason to suspect the occupants of the Acura were committing or about to commit a crime." 2015 WL 4758607, at *7-9. He also noted that the tip that launched the prosecution was of the least reliable sort, truly anonymous, a fact that should be considered in analyzing whether the officers had the requisite minimal level of objective justification to make the stop. 2015 WL 4758607, at *7, 9.

6

Chapman petitioned for review on the suppression issue only. He adopted Judge Buser's argument that the officers were not aware of a possible burglary-in-progress call until after they had stopped him and argued that the majority "erred by making factual findings at odds with those implicitly made by the district [judge]."

DISCUSSION

An appellate court reviews a district court's decision on a motion to suppress using a bifurcated standard. The district judge's factual findings are reviewed for substantial competent evidence, and the legal conclusions drawn from the evidence are reviewed de novo. *State v. Overman,* 301 Kan. 704, 709, 348 P.3d 516 (2015).

*Factual Findings*

The district judge's findings of fact were based on substantial competent evidence. The officers at the hearing on Chapman's motion to suppress testified that they responded to a suspicious character call received by dispatch in the middle of a snowy night; they saw a car matching the make and model of the car reported; the car was driving away from the area of the reported address; and there were no other cars on the road.

We agree with Judge Buser that one of the officers testified that the call eventually evolved into a burglary-in-progress call, but that was not the case when the car was stopped. The district judge did not include the existence of a burglary-in-progress call among his factual findings, and the Court of Appeals majority erred in relying upon a fact not found by the district judge. See *State v. Garza*, 295 Kan. 326, 335, 286 P.3d 554 (2012) (factfinding "is contrary to the function of an appellate court, which does not serve as a finder of fact"). The district judge also did not include the officers' observation of a 60-day tag on the Acura among his factual findings. Again, the Court of Appeals majority erred in relying upon a fact not found by the district judge. See 295 Kan. at 335.

7

*Legal Conclusion on Reasonable Suspicion*

Having examined the support for the facts found by the district judge, we turn our attention to his legal conclusion that reasonable suspicion supported the officers' stop of the car driven by Chapman. See *State v. Marx*, 289 Kan. 657, 661-62, 215 P.3d 601 (2009). In order for such a stop to pass muster under the search provisions of the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights, the law enforcement officer "must know of specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction. [Citation omitted.]" *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014); see also K.S.A. 22-2402(1) (law enforcement officer may stop any person in public place whom officer reasonably suspects "is committing, has committed or is about to commit" crime; may demand name, address, explanation of actions).

The burden is on the State to demonstrate the lawfulness of the stop. See K.S.A. 22-3216(2); *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015). Any court

> "making a reasonable suspicion determination must be able to find by a preponderance of the evidence that the State has presented 'at least a minimal level of objective justification' which, when examined under the totality of the circumstances, justifies a reasonable suspicion of the presence of illegal drugs or of some other serious criminal activity. [Citations omitted.]" *Jones*, 300 Kan. at 642.

When reviewing a decision regarding suppression, an appellate court must not "'pigeonhole' each factor as to innocent or suspicious appearances, but instead determines whether the totality of the circumstances justifies the detention. [Citation omitted.]." *State v. Coleman*, 292 Kan. 813, 817-18, 257 P.3d 320 (2011). "The relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but whether a sufficient degree of suspicion attaches to particular types of noncriminal acts. *United States v. Sokolow*, 490

U.S. 1, 10, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)." *Coleman*, 292 Kan. at 818. When evaluating the totality of the circumstances, "a reviewing court should employ common sense and the ordinary human experience and should accord reasonable deference to a law enforcement officer's ability to distinguish between innocent and suspicious actions." 292 Kan. at 818.

In this case, the Court of Appeals majority and dissent looked to three Kansas cases for guidance on reasonable suspicion: *Walker*, 292 Kan. 1; *Mesa*, 215 Kan. 674; and *McKeown*, 249 Kan. 506.

In *Walker*, a citizen made an in-person report to an officer that the citizen's truck had been broken into moments earlier and provided a description of the perpetrator. The officer drove in the direction the citizen said the assailant had fled and encountered defendant Maurice J. Walker, who matched the victim's description of the burglar. The officer stopped Walker "to confirm or dispel [his] belief that Walker might be the person who broke into [the] truck." 292 Kan. at 7. This court upheld the stop as supported by reasonable suspicion. 292 Kan. at 11. Walker is minimally persuasive because it is so factually distinguishable. It involved an in-person report from an identified citizen rather than a phoned-in anonymous tip, and the behavior witnessed by the victimized citizen was criminal.

In *Mesa*, officers were patrolling when they saw defendant Brigido Mesa standing in the doorway of an electrical shop at 4 a.m. The shops lights were on. Officers approached him. When Mesa tried to leave, officers blocked his path, and Mesa pushed an officer. This court upheld the stop. 215 Kan. at 681. Again, *Mesa* is distinguishable. First and foremost, the officers saw the suspicious behavior themselves and were not relying on an anonymous tip. Second, the evidence included information that the officers routinely patrolled that area and had never seen an individual at a business at that time of day. This combination of personal observations led them to suspect burglary.

Judge Buser was correct that the facts of *McKeown* are much more similar to the facts of this case. In *McKeown*, law enforcement responded to an anonymous tip that a green pickup truck was parked near a residence on a road in a rural area and that the tipster could not determine what the unfamiliar pickup was doing in that location. Although the behavior reported was suspicious, it was not criminal. By the time law enforcement arrived, the truck had moved. This court decided that a stop of the pickup, which by then was proceeding down the roadway in a lawful manner, was not supported by reasonable suspicion. 249 Kan. at 515.

Results in other jurisdictions back up the *McKeown* reasoning that a tip of suspicious but not criminal activity is not enough to support reasonable suspicion. See *United States v. Ubiles*, 224 F.3d 213, 218 (3d Cir. 2000) (tip that man in crowd on sidewalk had weapon insufficient to justify stop; gun possession not illegal); *State v. Abeln*, 136 S.W.3d 803, 812 (Mo. App. 2004) (no reasonable suspicion based on store employees' tip that defendant seen at store picking up, then putting down case of starter fluid, purchasing single can after noticing attention attracted); *In re J.L.B.M.*, 176 N.C. App. 613, 621-22, 627 S.E.2d 239 (2006) (no reasonable suspicion when officer stopped juvenile based solely on report of "suspicious person" at gas station); *Arguellez v. State*, 409 S.W.3d 657, 664 (Tex. Crim. 2013) (report of suspicious person taking pictures at pool insufficient to justify stop); *Harris v. Com.*, 276 Va. 689, 696-97, 668 S.E.2d 141 (2008) (no reasonable suspicion when anonymous tipster reported suspected intoxicated driver but failed to report erratic, reckless driving; behavior noncriminal); *State v. Carlson*, 130 Wash. App. 589, 594-98, 123 P.3d 891 (2005) (identified tipster reporting two individuals purchasing two ingredients used for methamphetamine production, including description of individuals, their vehicle; no justification for car stop).

Judge Buser's preferred holding in this case also is reinforced by his observation, despite no emphasis upon it from the parties or the district court, that the tip in this case

10

was anonymous. As we explained in *State v. Slater*, 267 Kan. 694, 986 P.2d 1038 (1999), such a tip is among the least reliable.

> "The reliability of the information or the tip given to the police depends upon the type of tip involved. The most favored of the tips are those which are, in fact, not really anonymous at all. These tips occur when the person giving the tip gives the police his or her name and address, or identifies himself or herself in such a way that he or she can be held accountable for the tip. Second on the scale of reliability are those tips in which, although the informant does not identify himself or herself, the informant gives enough information that his or her identity may be ascertained. This occurs where the informant states that he or she is calling from his or her place of business, or where the informant in person makes contact with the police officer. Less reliable is an anonymous tip that is truly anonymous where the veracity of the informant cannot be determined." 267 Kan. 694, Syl. ¶ 4.

Moreover, anonymous tips alone are rarely sufficient to provide reasonable suspicion to stop a vehicle:

> "Information received from an anonymous caller alone will seldom demonstrate the informant's basis of knowledge or veracity and, thus, is seldom sufficient, standing alone, to provide a reasonable suspicion to make a stop. However, where the anonymous tip is presumably based upon personal observation by the anonymous caller and the information is corroborated in part by the officer before the stop, it may provide a basis for reasonable suspicion justifying a stop." 267 Kan. 694, Syl. ¶ 5.

Since *Slater*, Kansas appellate courts have on at least two occasions upheld the legitimacy of a traffic stop based in part on an anonymous report of impaired or reckless driving, *i.e.*, actual criminal activity, see *State v. Crawford*, 275 Kan. 492, 496, 67 P.3d 115 (2003) (anonymous report of reckless driver); *State v. Green*, No. 111,618, 2015 WL 1514055, at *4-5 (Kan. App. 2015) (unpublished opinion) (report of DUI); but *Slater* and both of the later cases involved law enforcement corroboration of the tip's incidental

details. The results in these cases are consistent with United States Supreme Court precedent holding that reasonable suspicion existed when an anonymous tip of criminal activity was corroborated in its incidental details by law enforcement observations. See *Alabama v. White*, 496 U.S. 325, 331-32, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). This is not the situation in this case.

We need not elaborate further in this case on the law governing evaluation of tip reliability. We note only that counsel and district judges in future cases should take care to perform such an evaluation in their analysis of the totality of the circumstances supporting the existence of reasonable suspicion for a car stop.

On the facts found by the district judge here, we hold that there was no reasonable suspicion to stop the car driven by the defendant, and his motion to suppress should have been granted.

CONCLUSION

Because we conclude that there was no reasonable suspicion of criminal activity to support the stop of the car defendant Jeremy Andrew Chapman was driving, we reverse the Court of Appeals decision and the judgment of the district court and remand to the district court for further proceedings.