NOT DESIGNATED FOR PUBLICATION

No. 117,476

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TOMAS GARCIA JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; JAMES R. MCCABRIA, judge. Opinion filed April 6, 2018.
Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM: Tomas Garcia Jr. challenges the district court's denial of his motion to suppress, contending that law enforcement officers did not have reasonable suspicion to stop his vehicle. We affirm the district court.

*Factual and procedural background*

The facts underlying this case were established at the evidentiary hearing on Garcia's motion to suppress by Master Deputy Brad Clover from the Douglas County

1

Sheriff's Office. He testified that he responded to a report of a suspicious vehicle outside of Lawrence, Kansas, in the early morning hours on January 2, 2016. At about 3 a.m., an identified caller reported that a sedan had pulled into her driveway, backed out, parked on the street for a while, and then headed east. The caller stated she was concerned because there had been previous burglaries in the area, and her property had a second entrance east of the main drive. A little over a month before this call, Clover had investigated a burglary of a lawn care business less than 1/8 of a mile from the caller's residence.

While on the way to the location, Clover noticed a sedan turning around in a dead-end road close to a landscaping business and within a mile of the caller's location. Although he did not witness any traffic violations, various factors made him suspicious of potential criminal activity: the previous burglary, the fact that the area was not well traveled, the early hour, the proximity to another landscaping business, and the recent call from an identified caller about a suspicious sedan. Accordingly, Clover stopped the vehicle.

As Clover spoke with Garcia, he noticed an open container of alcohol in the back seat and that Garcia displayed signs of intoxication. These included watery and bloodshot eyes, slurred speech, difficulties communicating, and a strong smell of alcohol. When Clover asked Garcia if he had been drinking Garcia responded affirmatively. Garcia then took and failed field sobriety tests and was arrested. Clover searched the vehicle and found a partially empty 750 milliliter bottle of liquor in the glove compartment. Garcia was charged with driving under the influence, tampering with an ignition interlock device, and transporting an open container.

The district court ruled that Clover had reasonable suspicion to initiate the traffic stop. Accordingly, the district court denied Garcia's motion to suppress as well as Garcia's subsequent motion for reconsideration.

At his bench trial, Garcia stipulated to the facts presented at the preliminary hearing and in the affidavit of probable cause but renewed his objection to the evidence obtained from the traffic stop. The district court overruled that objection, convicted Garcia of all three offenses, and sentenced him to 12 months' imprisonment with release after 90 days and a $2,500 fine.

Garcia timely appeals, arguing solely that Clover lacked reasonable suspicion to stop his vehicle.

*Standard of review*

When reviewing a district court's ruling on a motion to suppress evidence, we review the factual underpinnings of that decision for substantial competent evidence and the ultimate legal conclusion de novo. *State v. Cleverly*, 305 Kan. 598, 604, 385 P.3d 512 (2016). Substantial competent evidence is evidence that is factually and legally relevant and sufficient for a reasonable person to rely upon it to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). The State bears the burden to demonstrate the lawfulness of the traffic stop. K.S.A. 22-3216(2); *State v. Estrada-Vital*, 302 Kan. 549, 556, 356 P.3d 1058 (2015).

*Analysis*

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights protect individuals against unreasonable searches and seizures. *Cleverly*, 305 Kan. at 604. A search or seizure performed without a warrant is presumptively unreasonable unless an exception to the warrant requirement applies. 305 Kan. at 604. One such exception is an investigatory detention based on reasonable suspicion. K.S.A. 22-2402; *Terry v. Ohio*, 392 U.S. 1, 18-19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State v. Bannon*, 306 Kan. 886, 892-93, 398 P.3d 846 (2017). This *Terry*

3

exception, which applies here, requires the officer conducting the stop to know of "specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction." *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

To satisfy that reasonable suspicion test, an officer must have a minimum level of objective justification for the stop. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). That minimum level is considerably less than proof of wrongdoing by a preponderance of the evidence. *Bannon*, 306 Kan. at 897. An appellate court must not pigeonhole each factor as to innocent or suspicious appearances, but instead determines whether the totality of the circumstances justifies the detention. *State v. Coleman*, 292 Kan. 813, 817-18, 257 P.3d 320 (2011); *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998). When evaluating the totality of the circumstances, this court "should employ common sense and the ordinary human experience and should accord reasonable deference to a law enforcement officer's ability to distinguish between innocent and suspicious actions." *Coleman*, 292 Kan. at 818.

Reasonable suspicion "depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). Looking at the totality of the circumstances while also taking into consideration the experiences of a trained law enforcement officer "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' [Citations omitted.]" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). But reasonable suspicion requires an officer to be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. *State v. Thomas*, 291 Kan. 676, 688, 246 P.3d 678 (2011).

Garcia challenges both the district court's factual findings and its legal conclusions. He first contends the district court erred in finding that the events occurred "in the country," because the evidence shows the call came from a location directly north of Clinton Lake, less than five miles from the city limits of Lawrence, Kansas.

To support this claim, Garcia attaches to his appellate brief a screenshot from Google Maps with three locations labeled: the location of the identified caller, the location of Garcia's car when Clover first saw it, and the location of the stop. But this map was not offered as evidence below and is not included in the record on appeal. We do not usually admit evidence on appeal; we are generally limited to reviewing the evidence offered below and included in the record on appeal. *Cross v. Kansas Dept. of Revenue*, 279 Kan. 501, 513, 110 P.3d 438 (2005).

Garcia invited us during oral arguments to take judicial notice of the map. But Garcia makes no argument about this issue and fails to show that the map is a matter specified in K.S.A. 60-409. See K.S.A. 60-412(c) ("The reviewing court in its discretion may take judicial notice of any matter specified in K.S.A. 60-409 whether or not judicially noticed by the judge.") And the judicial notice issue was not briefed. An issue not briefed by the appellant is deemed waived or abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Even if we took judicial notice of the map, however, the map fails to undermine the district court's factual finding that the events—the call and the stop—occurred in the country. As Garcia notes, the location is approximately five miles outside of the western city limit of Lawrence and is north of a state park. Clover's testimony shows that the area is not well traveled and that he saw no other vehicles off the highway. Further, the district court judge sits in Douglas County so has the knowledge to make that statement. The evidence before the district court supports the court's statement, and the map does not contradict it.

Garcia next argues that the district court erred in finding that his vehicle turned "repeatedly." But the uncontradicted evidence of record shows that Garcia was seen turning around or backing out at least twice—once by the identified caller in her driveway and once by Clover in the dead-end road. The evidence thus supports the district court's statement.

We find these two statements, as well as the district court's other factual findings, to be supported by substantial competent evidence, that is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.' [Citation omitted.]" *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015).

Garcia also attacks the district court's legal conclusion that reasonable suspicion supported Clover's vehicle stop. Garcia argues that the conclusion is legally incorrect because the caller's tip lacked sufficient reliability and Clover's stop was not based on specific, articulable facts.

A traffic stop based on a tip is lawful when the tip is reliable. *State v. Slater*, 267 Kan. 694, 699-700, 986 P.2d 1038 (1999). Courts generally consider three factors in determining whether a tip is reliable. First, a tip from an identified caller is considered more reliable than one from an unidentified or anonymous caller. Here, the caller gave her name and address to the dispatcher, and stated officers could contact her if necessary. The tip came from an identified caller and is thus "high on the reliability scale." 267 Kan. at 700.

Second, a tip may be considered more reliable when sufficient detail is given and when the caller personally observed the activity at issue. *Slater*, 267 Kan. at 702-03. Here, the caller personally observed the activity, called to report it, and sufficiently described the event—a "sedan" pulled into the caller's driveway, backed out, then parked

6

for a few minutes before heading east. Although such acts are not illegal, the caller's information helped provide Clover, a trained and experienced law enforcement officer, with reasonable suspicion that something more may be going on. See *State v. Moore*, 283 Kan. 344, 354-55, 154 P.3d 1 (2007) (finding innocent activity can provide reasonable suspicion to trained law enforcement officers).

Third, corroborating information and observations from a law enforcement officer raise the reliability level of a tip. *Slater*, 267 Kan. at 703. "An officer may corroborate the tip by observing illegal activity or by finding the person and vehicle and the location as substantially described by the informant." 267 Kan. at 703. The caller described the vehicle's movements and described it as a sedan heading east. When Clover responded to the area approximately 12 minutes later, the only car he saw was a sedan less than a mile from the caller's address. According to the map Garcia provided on appeal, Clover stopped Garcia's car east and north of the caller's location. The description of the vehicle, the location, and the actions of the car were sufficiently corroborated, further adding to the tip's reliability. Based on our consideration of all three factors, we find the tip was highly reliable.

A tip of suspicious, but not criminal, activity alone is not enough to support reasonable suspicion. *State v. Chapman*, 305 Kan. 365, 372, 381 P.3d 458 (2016); *State v. McKeown*, 249 Kan. 506, 514-15, 819 P.2d 644 (1991). But "the location, time of day, previous reports of crime in the area, and furtive actions of the suspects may well justify a stop." *State v. Kirby*, 12 Kan. App. 2d 346, 353, 744 P.2d 146 (1987), *disapproved of on other grounds in State v. Jefferson*, 297 Kan. 1151, 310 P.3d 331 (2013).

Many of those factors are present here—the reliable tip regarding a suspicious vehicle, the officer's swift corroboration of details from the call, the recent burglary at a nearby location, the early hour, the meandering path of the vehicle (turning around at the caller's residence and turning around again at the nearby dead-end road), and the fact that

the area generally is rural or not well traveled. We find it particularly significant that the caller related she was concerned about the sedan because of previous burglaries in the area, that Clover had recently investigated a burglary of a lawn care business less than 1/8 of a mile from the caller's residence, and that Clover saw Garcia's sedan turning around on a dead-end road near a landscaping business.

Based on the totality of the circumstances, we find the stop was based on specific, articulable facts that gave rise to reasonable suspicion of a crime. The district court properly found that Clover had a sufficient basis to conduct a *Terry* stop and thus properly denied Garcia's motion to suppress.

Affirmed.