No. 74,233

STATE OF KANSAS, *Appellant*, v. RAYMOND L. WEAVER, *Appellee*.

(915 P.2d 746)

Opinion filed April 19, 1996.

*Alan D. Hughes*, assistant county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellant.

*Reindert J. Kleinherenbrink*, of Hutchinson, was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by the State, pursuant to K.S.A. 22-3602(b)(1), from the trial court's order suppressing the evidence and dismissing the State's case without prejudice. The defendant was charged with driving while under the influence of alcohol or drugs, fleeing or attempting to elude a law enforcement officer, and consumption of an alcoholic beverage by a minor. The issue is whether a stop occurred when the law enforcement officer activated his flashing lights or when the defendant actually stopped his vehicle and submitted to the officer's authority.

On April 16, 1995, at approximately 1:30 a.m., Deputy Randy Headings of the Reno County Sheriff's Office was standing outside his patrol car in rural Reno County, talking to a resident and observing traffic near the intersection of Longview and Mayfield roads. He had been dispatched to this location due to two complaints about reckless driving in the area. One complainant described the recklessly driven vehicle as a light-colored Bronco or Blazer.

While talking to the resident, the officer observed a northbound vehicle approximately one-half mile south heading towards him. The vehicle's headlights suddenly went out, and the officer heard several individuals whooping and hollering in fun from the vicinity of the vehicle. The vehicle's headlights came back on and it proceeded a few feet, then the headlights went off again. This pattern of the flashing headlights occurred several times. When the headlights were on, the vehicle appeared to be moving toward the officer. However, the officer did not know and could not tell if the vehicle was moving during the time that the headlights were turned off. The officer testified he thought the vehicle was stopped when the headlights were turned off, but that it could have been moving very slowly. The officer also stated that, from what he could tell, the vehicle was on the roadway when the headlights were turned off.

Finally, the vehicle passed Deputy Headings with its headlights on. At this time, Headings observed that the vehicle was a brown-colored pickup with several people in the back and cab of the truck. Headings could not tell how many people were in the truck, their ages, their sex, or what they were doing. The officer followed the truck. The pickup was traveling close to the speed limit (55 m.p.h.). The officer testified that the pickup did not weave, nor did he see anything thrown out of the truck at this time. While following the truck, the officer did not observe any other oncoming vehicles or vehicles parked in the roadway. The officer stated that he "wanted to stop the vehicle to see why it had stopped" and to see what it was doing with its headlights. Further, the officer stated that he was suspicious because of the earlier reports of reckless driving and prior mailbox damage near where the vehicle had stopped. After

briefly following the truck, the officer activated his red and blue emergency lights in order to pull the car over.

When the officer activated his emergency lights, the pickup sped up and a chase ensued. The pickup turned into a private drive, drove through the yard, went through the garden, and drove into a wheat field where it finally stopped. The officer followed the truck into the field. Once the truck stopped, everyone in the truck got out of the vehicle and started running away, including the driver. The officer drew his handgun and ordered the driver to stop. The driver immediately stopped and was arrested. He was then identified as the defendant.

The defendant was charged with driving while under the influence of alcohol or drugs, fleeing or attempting to elude a police officer, and consumption of alcoholic beverages by a minor. The defendant filed a motion to suppress the evidence, alleging that the officer was without sufficient probable cause to stop the defendant's vehicle. The defendant asked the trial court to suppress all the evidence seized as a result of unconstitutional stop, including the defendant's identity and the alcohol test results.

The trial court ruled that the officer must have had a reasonable and articulable suspicion of criminal activity at the point in time when the officer decided to stop the vehicle by activating his emergency lights. Thus, in determining whether the officer had reasonable suspicion to make a stop, the trial court did not consider any of the events which occurred after the officer activated his emergency lights. The trial court found that the pickup was parked on the road and its lights were turned off, then the lights were turned back on, and the truck proceeded. The court found that this observation did not create a reasonable suspicion of criminal activity. Thus, the court found that at the time the officer activated his emergency lights and decided to stop the vehicle, the officer did not have a reasonable suspicion of criminal activity. Relying on *State v. McKeown,* 249 Kan. 506, 819 P.2d 644 (1991), the court granted the defendant's motion to suppress all the evidence discovered after the officer activated his emergency lights, and the court dismissed the charges against the defendant.

Both parties agree that the stop of a moving vehicle always constitutes a seizure; thus, to make such a stop, an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402. *State v. Field*, 252 Kan. 657, 659, 847 P.2d 1280 (1993). K.S.A. 22-2402(1) states:

"(1) Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand . . . the name [and] address of such suspect and an explanation of such suspect's actions."

The question of whether reasonable suspicion existed under K.S.A. 22-2402 is a question of law, or in some cases a mixed question of law and fact for this court to determine under the totality of the facts and circumstances. *State v. Field*, 252 Kan. at 664-65. This court recently clarified the standard it should use when reviewing a trial court's suppression of evidence in *State v. Vandiver*, 257 Kan. 53, 891 P.2d 350 (1995). The court stated:

"Upon the hearing of a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. *Mincey v. Arizona*, 437 U.S. 385, 390-91, 57 L. Ed. 2d 290, 98 S. Ct. 2408, 2412-13 (1978); *State v. Schur*, 217 Kan. 741, 743, 538 P.2d 689 (1975). An appellate court will uphold a trial court's suppression of evidence if that ruling is supported by substantial competent evidence. *State v. Chiles*, 226 Kan. 140, 144, 595 P.2d 1130 (1979). When reviewing a trial court's decision as to the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination." 257 Kan. at 57-58.

First, this court must determine when the "stop" occurred and at what point in the process of the stop was the officer required to have reasonable suspicion. The State contends that the stop did not occur when the officer activated his emergency lights. Rather, the lights simply indicated that the officer intended to stop the vehicle, and the lights were used to effectuate the stop. As the State points out, the vehicle did not come to a stop when the officer turned on his lights. Instead, the vehicle sped away, leading the officer on a chase through a yard, a garden, and into a wheat field. Even when the vehicle quit moving, the State contends that a stop did not occur because the defendant and the other passengers

jumped out of the truck and starting running. According to the State, a stop did not occur until the officer pulled his gun and ordered the defendant to stop, which caused the defendant to actually stop running. The State argues that the activation of an officer's emergency lights should be viewed only as an order to stop and not as an actual stop in and of itself.

The State cites to *State v. Hodges*, 252 Kan. 989, 991, 851 P.2d 352 (1993), as authority for its position that a stop did not occur until the defendant stopped running in the wheat field. In *Hodges*, a Riley County police officer had been assigned to the surveillance of a Manhattan business district which had been burglarized. The officer observed a vehicle make several suspicious maneuvers in the surveillance area. The vehicle eventually left the surveillance area and drove to a restaurant. The occupants of the vehicle, including the defendant, went into the restaurant and stayed for approximately 30 minutes. The occupants then returned to the car and headed out of town. At this point, the officer turned on his emergency lights in Riley County and followed the vehicle into Geary County, where the vehicle eventually pulled over and the occupants were arrested. In analyzing the validity of the stop, this court stated: "[T]he suspects' car was still in Riley County when [the officer] turned on his *emergency lights. The stop was made, however, in Geary County.*" 252 Kan. at 991. (Emphasis added.) While the issue of when the stop occurred was not directly at issue in *Hodges*, the court found that the stop did not occur when the officer turned on his emergency lights in Riley County. Rather, the stop occurred in Geary County when the car was actually pulled over.

Further, *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991), is a case which supports the State's position. In *Hodari*, two police officers observed a group of young people, including the defendant, huddled around a car in a high crime area. When the young people saw the officers, they fled. At this point, one of the officers began to chase the defendant. During the chase, the officer observed the defendant throw a rock, which was later identified as crack cocaine, into the air. A moment later, the officer tackled the defendant and handcuffed him. The defen-

dant moved to suppress the cocaine. The California Court of Appeal found that the defendant had been seized when he saw the officer chasing him. The court also found that this seizure was not based on reasonable suspicion; thus, it suppressed the cocaine as the result of an illegal seizure.

The United States Supreme Court reversed. It found that a seizure does not occur unless (1) an officer applies physical force or (2) the defendant submits to the officer's assertion of authority. At the time the defendant threw the cocaine, he had not been physically touched by the officer and the defendant had not submitted to the officer's show of authority (the pursuit). Thus, the defendant was not seized until the officer caught up to the defendant and forced him to stop. As such, the discarded cocaine was not the result of an unreasonable seizure and should not have been suppressed.

This case is analogous to *Hodari*. The stop of a moving vehicle always constitutes a seizure. *State v. Field*, 252 Kan. at 659. Here, the officer decided to stop and seize the vehicle by activating his emergency lights and pursuing the vehicle. However, the defendant did not yield to the officer's show of authority (the emergency lights) by pulling over. Thus, a stop did not occur when the officer activated his emergency lights. Instead, the defendant sped away from the officer and attempted to avoid seizure just as Hodari did. During this chase, the defendant engaged in illegal conduct, such as driving through a private yard into a wheat field. The stop did not occur until the defendant submitted to the officer's authority and halted in the wheat field once the officer trained his gun on the defendant. As such, the evidence of the defendant's conduct obtained during the chase was not the result of a unreasonable seizure and should not have been suppressed.

*Hodari* cites another applicable case, *Brower v. Inyo County*, 489 U.S. 593, 103 L. Ed. 2d 628, 109 S. Ct. 1378 (1989). In *Brower*, several police cars, with their emergency lights on, chased the defendant's vehicle until he crashed into a road blockade erected by the police. The defendant was killed in the crash and his heirs sued the State, contending that his death was the result of an unreasonable seizure caused by the road blockade. In discussing the *Brower*

case, the *Hodari* Court stated: "We did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that 'show of authority' did not produce his stop." 499 U.S. at 628.

Thus, the "stop" at issue here did not occur until the defendant submitted to the officer's show of authority in the wheat field. The trial court found that even though the actual stop did not occur until the defendant halted in the wheat field, the officer still should have had reasonable suspicion when the officer "determined to stop the vehicle" or when the process of the stop started. Consequently, the trial court found that in determining if the officer had reasonable suspicion to stop the defendant, it could only consider the facts which existed at the time the officer decided to stop the vehicle and turned on his emergency lights.

Relying on these limited facts, the trial court found that the officer did not have reasonable suspicion to make the stop. As support for its ruling, the district court cited *State v. McKeown*, 249 Kan. 506. In *McKeown*, a Reno County police officer was dispatched to Valley Pride Road to check out an older green pickup which was unfamiliar in the area. Apparently, the vehicle had been parked partially on the roadway with its lights off. When the officer arrived at the location, a vehicle had its lights on and was stopped in the road next to another car. As the officer approached, the vehicle drove off and the officer could see that it was an older green pickup. The officer stopped the vehicle because it was "the vehicle that [he] was supposed to check on in the area." However, the officer testified that "the car was not doing anything wrong when he stopped it." 249 Kan. at 507. When the officer approached the car, he saw an open container of alcohol and arrested the defendant. After the arrest, the officer searched the defendant and his vehicle and found marijuana and drug paraphernalia. The defendant filed a motion to suppress all the evidence found as a result of the stop, alleging that the officer did not have reasonable suspicion to stop the defendant. The district court agreed and suppressed the evidence. This court affirmed, stating:

"The area was dark when the officer approached. He saw taillights. Then he saw headlights of a second vehicle facing him that was adjacent to the first vehicle.

The first vehicle left the scene, while the second vehicle approached the officer and then turned a corner. The officer testified that the vehicle was not doing anything wrong. This stop cannot be justified under K.S.A. 22-2402 on the grounds the officer observed a crime being committed." 249 Kan. at 514.

The State contends that the trial court improperly relied on *McKeown*. *McKeown* may or may not support the defendant's position that the officer did not have reasonable suspicion when he turned on his emergency lights. However, the State argues that whether the officer had reasonable suspicion when he turned on his emergency lights is irrelevant. According to the State, the officer was allowed to rely on all of the circumstances which occurred up until the actual stop in the wheat field to determine if he had reasonable suspicion to stop the defendant, regardless of when the officer decided to stop the defendant. It appears that the defendant in *McKeown* immediately stopped when the officer indicated that he should pull over. Thus, the officer there did not have evidence of the defendant attempting to elude the police or driving through a private yard and into a wheat field to bolster his reasonable suspicion of criminal activity, as was the case here. As such, *McKeown* is not analogous to or determinative of this case.

The State further supports its position that the officer could rely on all the circumstances which occurred up until the actual stop in determining whether he had reasonable suspicion to stop the defendant by citing to *State v. Guy*, 242 Kan. 840, 843, 752 P.2d 119 (1988). In *Guy*, an officer followed the defendant's vehicle around Salina for most of the day due to "suspicious activity" the defendant was engaged in which seemed to indicate that he was involved in the drug trade. In the evening, the officer followed the vehicle onto the highway and had to drive over 100 m.p.h. to keep a uniform distance between his car and the defendant's vehicle. The vehicle was pulled over, and the officer observed marijuana in plain view in the vehicle. The defendant was arrested. The defendant filed a motion to suppress evidence, alleging that the stop was not based on reasonable suspicion. The trial court granted the motion. In reversing the trial court, this court stated:

"The trial judge found that the officers stopped the car not for speeding but for investigation, and to identify the occupants. He pointed out that no accurate speed

measurement was made, and that there was merely an estimate of the speed on the part of Officer Poore; but the judge said, 'I have no doubt that these defendants were exceeding the speed limit.' He concluded that the defendants were not stopped for speeding, and the officers could articulate no basis for reasonably suspecting that the defendants were committing, had committed, or were about to commit a crime as required by the statute. Therefore, the court suppressed the evidence.

"We agree with the trial court that the officers had no articulable basis to stop the defendants for drug-related activity. The officers saw no money or property change hands; they had no information that these defendants had ever been engaged in such activity; they did not identify those persons with whom defendants talked as being engaged in any unlawful activity; and they saw no violations of the law, not even traffic violations, within the city of Salina. The facts known to the officers, as related by them in the record, were insufficient to provide a reasonable suspicion that at the time the defendants left Salina they were committing, had committed, or were about to commit a crime.

. . . .

"*We hold that at the time the defendants left Salina and turned onto Interstate 70 the pursuing officers did not have knowledge of facts giving rise to a reasonable and articulable suspicion that the defendants had committed, were committing, or were about to commit a crime. But the critical time that the officers must have knowledge of such facts is at the time of the actual stop.* Here, when the stop was made, an officer had observed the Cadillac being driven at a speed in excess of 100 miles per hour—clearly in excess of the then maximum speed limit on that interstate highway, 55 miles per hour. Under K.S.A. 22-2402, an officer may stop a person whom he sees commit a crime, whether it be a felony, a misdemeanor, or a traffic offense. K.S.A. 1987 Supp. 21-3105, and 22-2402. " 242 Kan. at 842-43.

Thus, under *Guy*, the State contends that the officer's observations of the defendant, while in pursuit of the defendant but before the actual stop occurs, may be considered when determining whether reasonable suspicion existed for a stop. According to the State, the critical time to determine reasonable suspicion is at the time of the actual stop, not at the point of pursuit or when the officer makes a determination to stop the vehicle.

The defendant attempts to distinguish *Guy*. The defendant points out that the officers in *Guy* observed the vehicle being driven over the speed limit, thus giving them reasonable suspicion to stop the vehicle under K.S.A. 22-2402, before the officers ever

decided to stop the vehicle, whereas, in this case, the officer did not observe the defendant attempt to flee the police or drive into a wheat field until after the officer had decided to stop the defendant and had already activated his emergency lights. We agree that the facts of *Guy* are different from this case. However, *Guy* promulgated a rule of law, stating "the critical time that the officers must have knowledge of such facts [supporting a reasonable suspicion] is at the time of the actual stop." 242 Kan. at 843. *Guy* is also supported by *Hodari*, 499 U.S. 621. In *Hodari*, the Court found that the officer's observation of the defendant throwing a rock of cocaine provided the officer with reasonable suspicion to seize the defendant, making the subsequent seizure proper, even though the officer did not make this observation until after he had begun chasing the defendant and had already made the determination to stop him.

Here, the actual stop occurred when the defendant submitted to the officer's authority in the wheat field. At this time, the officer had knowledge of several facts, such as the defendant's attempt to elude a police officer, which included driving into a private driveway, yard, garden, and wheat field. Thus, the officer's observation of the defendant's conduct during the chase could have been used by the officer to determine if he had reasonable suspicion to stop the defendant in the wheat field.

The trial court erred in its reasonable suspicion determination by not considering the circumstances which the officer observed after he activated his flashing lights but before the actual stop occurred. We reverse and remand to the trial court for reconsideration of the officer's reasonable suspicion based on these circumstances.

Reversed and remanded.