No. 77,221

CITY OF DODGE CITY, *Appellee,* v. ROBERT HADLEY, *Appellant.*

(936 P.2d 1347)

Opinion filed April 18, 1997.

*Leslie Phelps Hess,* of Patton, Kerbs & Hess, of Dodge City, argued the cause and was on the brief for appellant.

*Terry J. Malone,* city attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Robert Hadley was convicted of driving under the influence (DUI) and transportation of an open alcoholic beverage container and sentenced. Hadley filed a notice of appeal from the judgment of conviction. The Court of Appeals dismissed the appeal on the ground that the notice of appeal had not been filed within the 10-day limitation period of K.S.A. 22-3608(c). Hadley's petition for review was granted by this court on November 8, 1996. The parties were directed to brief the jurisdictional issue as well as the issues on appeal.

On December 6, 1994, the dispatcher sent Officer Ernest Mazza of the Dodge City Police to a convenience store on East Trail "in reference to a disorderly male, who they identified by the name of Robert Hadley." Before Officer Mazza got to the convenience store, his attention was diverted to a truck stop. At the truck stop, an employee told Officer Mazza that Robert Hadley had left in a red Ford pickup and had gone "over the overpass south." When Mazza got to the top of the overpass, he could see a red Ford pickup turning into the parking lot of the convenience store. A check of the license tag showed that it belonged to Robert Hadley.

Officer Mazza went over to the red truck. The driver, Hadley, rolled his window down and asked in a slurred manner what the officer wanted. Getting out of the truck at the officer's request, Hadley almost fell. Officer Mazza could smell a strong odor of alcohol on his breath. Hadley showed other indications of intoxication—a wooden expression and glazed eyes.

Officer Mazza asked Hadley to perform field sobriety tests. Hadley said he was stiff and unable to do the walk-and-turn because he was old. Mazza testified, "He had to keep holding himself up on a vehicle." According to Mazza, "Due to his obvious intoxication, I placed him under arrest."

In the meantime, Officer Schwearing arrived. After defendant was arrested, Schwearing searched the vehicle and found an open bottle of whiskey behind the driver's seat. The bottle was admitted into evidence.

Defendant was taken to the police station. After being read the implied consent advisory form, defendant refused to take a breath test. He was asked to repeat the sobriety tests. Defendant was able

to stand on one leg only 7 seconds, and he was unable to do the walk-and-turn properly or complete it. His attempts were videotaped, and 8 minutes of the videotape were admitted into evidence and viewed by the trial judge. When asked to recite a short segment of the alphabet beginning with a letter somewhere in the middle, Hadley started with A and went through Z. He also failed to follow instructions when asked to touch his finger to his nose with his head tilted back.

Officer Mazza had 8½ years' experience in law enforcement, approximately 80 hours of DUI detection and apprehension training, and had made approximately 150 arrests. On this occasion, Officer Mazza observed Hadley driving his truck for a short distance and further observed him for approximately 30 minutes after stopping him. In Officer Mazza's opinion, Hadley was under the influence of alcohol and, as a result, was unable to operate a vehicle safely. His opinion testimony was admitted over defense counsel's objection.

Sergeant Robert Strader of the Dodge City Police was at the police station when Officer Mazza brought Hadley in. Strader testified that there was a strong odor of alcoholic beverage from Hadley's breath, his speech was slurred, and his eyes were bloodshot. He also testified that Hadley was unable to keep his balance while trying to do the sobriety tests. Although Strader had not observed Hadley driving on the night of the arrest, he was of the opinion that Hadley could not have operated a vehicle safely due to his being under the influence of alcohol. His opinion testimony was admitted over defense counsel's objection.

Judgment was entered in municipal court against Hadley on charges of DUI and transportation of an open alcoholic beverage container. After sentencing, Hadley filed a notice of appeal of his convictions and sentence to district court. Trial took place in the district court on February 14, 1996. Before adjourning, the trial judge announced from the bench that he found Hadley guilty of both offenses. Upon being advised that Hadley already was in treatment for alcohol abuse, the trial judge stated to the city prosecutor and defense counsel: "[I]f you would, please prepare a release for your treatment providers, Mr. Hadley. And, I will leave the sched-

uling to the two of you for sentencing. I suppose that could occur any time after we get [Hadley's treatment records] released." The journal entry of conviction is file-stamped July 2, 1996. According to the journal entry of sentencing, sentencing occurred on March 15, 1996. The journal entry of sentencing is file-stamped June 17, 1996. The notice of appeal to the Court of Appeals was filed in the district court on July 2, 1996. It states that Hadley "does hereby appeal to the Court of Appeals . . . from the decision made and entered on the 14th day of February, 1996, and filed on the 2nd day of July, 1996."

In an order dated September 11, 1996, the Court of Appeals dismissed the appeal for lack of jurisdiction. The reasoning of the Court of Appeals was as follows:

"A criminal defendant has 10 days from judgment to file a notice of appeal. K.S.A. 22-3608(c). Judgment in a criminal case is sentencing, and the time to file a notice of appeal runs from oral pronouncement of sentence instead of the filing of a journal entry. *State v. Bost*, 21 Kan. App. 2d 560, Syl. ¶ 1, 903 P.2d 160 (1995).

"In the present case, Hadley was sentenced on March 15, 1996, but did not file his notice of appeal until July 2, 1996, beyond the 10-day limitation of K.S.A. 22-3608(c). . . . This court lacks jurisdiction over the appeal because the notice of appeal is untimely."

We first determine if this court has jurisdiction of the appeal. K.S.A. 22-3608 provides:

"(a) If sentence is imposed, the defendant may appeal from the judgment of the district court not later than 10 days after the expiration of the district court's power to modify the sentence. The power to revoke or modify the conditions of probation or the conditions of assignment to a community correctional services program shall not be deemed power to modify the sentence. The provisions of this subsection shall not apply to crimes committed on or after July 1, 1993.

"(b) If the imposition of sentence is suspended, the defendant may appeal from the judgment of the district court within 10 days after the order suspending imposition of sentence. The provisions of this subsection shall not apply to crimes committed on or after July 1, 1993.

"(c) For crimes committed on or after July 1, 1993, the defendant shall have 10 days after the judgment of the district court to appeal."

By eliminating variables and conditions, the legislature simplified calculation of the deadline for filing a notice of appeal for crimes

committed on or after July 1, 1993. It does not appear, however, that the legislature succeeded in enacting a plain and completely unambiguous formulation. Defense counsel attached to the petition for review an affidavit, which states in part:

"1. My name is Leslie Phelps Hess and I was counsel for the defendant/appellant during the district court trial of his D.U.I. and transportation of an open container ticket in Ford County and the subsequent appeal to the Court of Appeals.

"2. After the court trial's finding of guilt upon the defendant/appellant, the defendant/appellant requested trial counsel to appeal the judge's decision.

"3. The defendant/appellant was notified by counsel that an appeal could not be filed until such time as the journal entry of conviction had been filed and the sentencing had occurred.

"4. It has always been the defendant/appellant's intention to appeal the district court's finding of his guilt on the D.U.I. charge and the transportation of an open container charge.

"5. The sole reason the appeal was not timely filed was based upon the mistake of defense counsel in this matter."

The possibility of construing K.S.A. 22-3608(c) as Ms. Hess did lies in the legislature's use of the term "judgment" rather than a more descriptive phrase such as "pronouncement of sentence in open court." The Court of Appeals cited *State v. Bost*, 21 Kan. App. 2d 560, Syl. ¶ 1, 903 P.2d 160 (1995), for the definition of judgment in a criminal case as sentencing and the rule that the time to file a notice of appeal runs from oral pronouncement of sentence instead of the filing of a journal entry. Thus, it appears that accurate construction of the statute requires knowledge of or reference to case law in addition to consultation of the statute.

In *State v. Shortey*, 256 Kan. 166, 884 P.2d 426 (1994), the court considered the request of a defendant in circumstances similar to those in which Hadley finds himself. The notice of appeal filed by Shortey's counsel was untimely. An affidavit of the appointed counsel responsible for the filing of the notice of appeal stated: " 'I didn't realize that Notice of Appeal needed to be filed earlier. If that is indeed the case, it is wholly my fault, as Mr. Shortey has taken every step to insure that his appeal is prosecuted.' " 256 Kan. at 168. The court summarized the applicable principles as follows:

"[I]n general, Kansas appellate courts do not have jurisdiction to entertain an appeal in a criminal case unless a notice of appeal is filed within the time established by the statute. However, in *State v. Ortiz*, 230 Kan. 733, 736, 640 P.2d 1255 (1982), we recognized an exception to the general rule where in the interest of fundamental fairness 'a defendant either was not informed of his or her rights to appeal or was not furnished an attorney to exercise those rights or *was furnished an attorney for that purpose who failed to perfect and complete an appeal.*' (Emphasis supplied.)" 256 Kan. at 167-68.

The court concluded that in the circumstances described in the affidavit of Shortey's counsel, "the exception set forth in *Ortiz* should be applied." 256 Kan. at 168. Accordingly, the court entertained the appeal.

The City argues that the court wrongly recognized an exception to the strict rule governing appellate jurisdiction. The City would have this court overrule cases such as *Shortey*, 256 Kan. 166, *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982), and *Brizendine v. State*, 210 Kan. 241, 242-44, 499 P.2d 525 (1972). We decline to do so.

The uncontroverted affidavit of Hadley's counsel, in which she assumes complete responsibility for the untimely filing of the notice of appeal, sufficiently establishes that it was the attorney who failed to perfect the appeal. We find *Shortey* to be controlling and will consider the appeal on its merits.

We first consider the admission of the opinion testimony of the police officers regarding Hadley's intoxication. Hadley suggests that the court's review of this issue is unlimited because it involves a conclusion of law. In fact, the measure applied by this court to questions of the admissibility of opinion testimony is as follows:

"The admissibility of expert testimony is a matter to be determined by the trial court in the exercise of its discretion. The trial court's determination will not be overturned absent an abuse of such discretion which results in prejudice to the party whose testimony was excluded. *Marshall v. Mayflower Transit, Inc.*, 249 Kan. 620, Syl. ¶ 3, 822 P.2d 591 (1991). " *Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 762, 915 P.2d 86 (1996).

Hadley relies on *State v. Steadman*, 253 Kan. 297, 855 P.2d 919 (1993), for the proposition that a police witness' opinion about defendant's guilt is inadmissible. There, the court stated:

"In a criminal trial, the defendant has the right to have the jury determine from the evidence whether the defendant is guilty or not. The police witnesses can testify from their experience as to a role the defendant played in an illegal enterprise—they cannot testify that in their opinion the defendant was guilty of the crime." 253 Kan. at 304.

In *Steadman,* the police witnesses were permitted to testify "that in their opinion[s] the defendant was guilty of the crime and exhibited the pressure felt by a guilty person, other persons interviewed were not guilty of the crime, and there was sufficient probable cause for the issuance of a search warrant for the defendant's residence." 253 Kan. at 304. For example, one officer testified with regard to Steadman, " 'In my opinion he killed Mr. Haislip.' " 253 Kan. at 300. The court concluded that the opinion testimony deprived Steadman of a fair trial and consequently reversed his conviction of second-degree murder. We do not find *Steadman* to be applicable in the present case.

K.S.A. 60-456 governs the admissibility of opinion testimony and provides:

"(a) If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony.

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

In *State v. Shultz,* 225 Kan. 135, 587 P.2d 901 (1978), a former deputy county attorney was permitted to testify as to the defendant's sanity at the time he committed the offense. This court found no error, stating:

"It has been the rule in this state for many years that nonexpert witnesses who are shown to have had special opportunities to observe may give opinion evidence as to sanity. See *State v. Randol,* 212 Kan. 461, 468, 513 P.2d 248 (1973) and

cases therein cited; *State v. Truskett*, 85 Kan. 804, 821, 118 Pac. 1047 (1911); *State v. Beuerman*, 59 Kan. 586, 589, 53 Pac. 874 (1898); and see K.S.A. 60-456. The weight to be given such testimony, as well as the weight to be accorded expert testimony, is for the jury to determine. *State v. Randol*, 212 Kan. at 468; and see *State v. Sanders*, 225 Kan. 147, 587 P.2d 893 (1978)." 225 Kan. at 137.

Lay witnesses' opinions as to intoxication were permitted in *State v. Townsend*, 146 Kan. 982, 986, 73 P.2d 1124 (1937). This court said:

"Appellant next argues that the court erred in permitting any of the witnesses to testify that he was under the influence of intoxicating liquor. If the fact was observable to those who soon came to the scene of the collision no reason suggests itself to exclude it, any more than to exclude testimony of other pertinent facts."

As with expert testimony, the admission of lay opinion testimony lies within the sound discretion of the district court. *Smith v. United Technologies*, 240 Kan. 562, 565, 731 P.2d 871 (1987).

In the present case, following the defendant's objection, the trial court inquired of counsel for the City if he was attempting to qualify the officer as an expert. Counsel responded, "To give his opinion, yes, Your Honor." The court then overruled defendant's objection. The trial court allowed the officer to render an opinion as an expert on the defendant's intoxication and his ability to safely operate a motor vehicle.

In *State v. Carr*, 230 Kan. 322, 324-25, 634 P.2d 1104 (1981), this court found no error in allowing an officer to give such an opinion as an expert:

"Officer Masters had an opportunity to observe Thomas Carr briefly in the bedroom and at some length during the arrest procedure. Masters' qualifications as an expert were established. He had been with the police department a number of years and, in the course of his work, had had an opportunity to observe intoxicated persons. In allowing Masters to testify, the trial judge observed, 'Police officers soon become experts on intoxication and the degrees and level thereof.'

"Masters testified that upon initial contact Carr had an odor of alcohol on his breath but was not intoxicated to the state he didn't realize what he was doing or where he was. The trial court allowed similar expert testimony from Officer Marceau and received lay opinions reaching a contrary conclusion as to Carr's intoxication.

"The basis for admission of expert testimony is the need to assist the trier of fact. *State v. Reed*, 226 Kan. 519, 521, 601 P.2d 1125 (1979); *Plains Transp. of Kan., Inc. v. King*, 224 Kan. 17, 21, 578 P.2d 1095 (1978). In allowing Masters'

expert testimony, the court as trier of fact apparently felt the testimony would be of assistance. This court has often held the admissibility of expert testimony lies within the power of discretion of the trial court, and the trial court will not be reversed on appeal absent a showing of abuse of the exercise of that power of discretion. *State v. Washington*, 229 Kan. 47, 56, 622 P.2d 986 (1981); *State v. Reed*, 226 Kan. at 521; *Plains Transp. of Kan., Inc. v. King*, 224 Kan. at 21. We find no abuse of discretion in allowing Masters to testify."

Unlike *Steadman,* the officers in the present case are not expressing an opinion that the defendant is guilty. Also, unlike *Steadman,* this case was tried without a jury and, as the trial judge pointed out, he would presume that the officer believed the defendant was under the influence because he issued the complaint. "So his opinion as to whether the defendant was under the influence really is superfluous." The officer's testimony as to the defendant's sobriety and his ability to safely operate the motor vehicle was based on personal observations and expertise as a police officer, and we find no abuse of discretion in allowing the testimony.

Even if the trial court's ruling had been error, it would be harmless. First, the evidence of guilt is of such a direct and overwhelming nature that it can be said that the challenged error could not have affected the result of the trial. See *State v. Denney,* 258 Kan. 437, 445, 905 P.2d 657 (1995). Second, as noted above, this case was tried without a jury. "Where trial is by the district court, on appellate review the supreme court indulges in the presumption the lower court considered only properly admissible evidence in reaching its decision unless the contrary is shown by the record." *State v. Gordon,* 219 Kan. 643, Syl. ¶ 11, 549 P.2d 886 (1976).

Hadley next challenges the legality of the search of his truck which produced the open bottle of whiskey. He relies on K.S.A. 22-2501 and *State v. Anderson,* 259 Kan. 16, 910 P.2d 180 (1996). The City contends that the court should not consider this issue because Hadley failed to follow the procedure set out in K.S.A. 22-3216 for requesting the court to suppress evidence. The statute, however, provides in part: "[A] motion shall be made before trial, in the court having jurisdiction to try the case, unless opportunity therefor did not exist or the defendant was not aware of the ground for the motion, but the court in its discretion may entertain the

motion at the trial." At trial, Hadley's attorney objected to the introduction of the whiskey bottle on several grounds, including that the search was not "incidental to an arrest." The trial judge disagreed, and the objection was overruled.

Hadley makes the following assertions in his brief:

"[T]he defendant was already under arrest, . . . handcuffed and in the officer's vehicle when the search of the vehicle was conducted. . . . There was no need to perform the search to protect the officer from attack. There was no area in the vehicle in which the defendant could have obtained any weapon since he was handcuffed. The search was not going to prevent the defendant from escaping since he was handcuffed and out of the immediate area."

Officer Mazza testified:

"Q. Can you describe to us what attempts you did to have him perform the field sobriety tests?

"A. It was cold, and the parking lot was icy. I got him on the sidewalk part. I asked him if he had problems with [his] hips, legs, knees, and ankles. He said he was stiff and was unable to do the walk-and-turn because he was old. He had to keep holding himself up on a vehicle. Officer Schwearing arrived shortly after that. Due to his obvious intoxication, I placed him under arrest.

"Q. Okay. The—after placing him under arrest, what did you do?

"A. A search after the arrest."

Officer Mazza also testified that he was standing right next to Officer Schwearing while Schwearing searched the vehicle. There is no testimony in the record before us which would place Hadley in the patrol car in handcuffs before his truck was searched.

Thus, the only question is whether the facts establish that the search was conducted in accord with the statute. K.S.A. 22-2501 provides:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of

(a) Protecting the officer from attack;

(b) Preventing the person from escaping; or

(c) Discovering the fruits, instrumentalities, or evidence of the crime."

It is the City's position that the search was proper for the purpose of discovering the instrumentalities or evidence of the DUI offense and that the open bottle of whiskey served that purpose for the DUI as well as establishing the second offense. Hadley argues that

"the City has failed to establish that any of the three requirements set forth in K.S.A. 22-2501 were fulfilled." He failed, however, to create a record for any of his factual assertions, and on the record before us we cannot say that the search was not properly conducted incidental to the arrest.

We next consider if the arresting officer had reasonable suspicion to stop Hadley and/or probable cause to arrest him. The record contains defendant's pretrial filing entitled "Motion to Suppress." In fact, the relief sought was dismissal of the charges. Grounds stated in the motion were that Officer Mazza did not have reasonable suspicion to stop Hadley and that Officer Mazza did not have probable cause to arrest him.

In *State v. Field*, 252 Kan. 657, 664-65, 847 P.2d 1280 (1993), the court set out the standard of review applicable to this issue: "[T]he determination of whether an officer has reasonable suspicion to stop a vehicle is a question of law, or in some cases a mixed question of law and fact, for the appellate court to determine under the totality of the facts and circumstances."

Hadley cites K.S.A. 22-2402(1), which provides: "Without making an arrest, a law enforcement officer may stop any person in a public place whom such officer reasonably suspects is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions." He contends that Officer Mazza had no basis for believing at the time of the stop that Hadley "is committing, has committed or is about to commit a crime." Hadley asserts: "No traffic infractions had been made and the defendant had parked his vehicle correctly." Hadley cites vehicle stop cases, *State v. Weaver*, 259 Kan. 844, 847, 915 P.2d 746 (1996), and *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991), for the proposition that the "officer must have articulable facts sufficient to constitute reasonable suspicion."

In *McKeown*, the court stated: "The stop of a vehicle being driven upon the streets . . . always constitutes a seizure. Therefore, to stop a *moving* vehicle an officer must have articulable facts sufficient to constitute reasonable suspicion under K.S.A. 22-2402 and *Terry [v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868

(1968)]." (Emphasis added.) 249 Kan. at 510. In *Weaver*, the court made it clear that there is no stop for the purpose of applying the rule from *McKeown* until the defendant has submitted to the officer's authority. 259 Kan. at 849. By Hadley's own account, he had parked his truck before Officer Mazza approached it. When Officer Mazza got out of his patrol car and went over to the truck, Hadley rolled down his window and asked what the officer wanted. We question whether there was a "vehicle stop" under the circumstances of this case. In any event, the parties seem to agree that the appropriate inquiry is under K.S.A. 22-2402. Whether it was a vehicle stop or some other type of stop, it would have occurred no earlier than when Hadley rolled down his window to talk to Officer Mazza. Long before that, Officer Mazza knew from dispatches that police had been asked by persons at two separate retail outlets to check on the disorderly conduct of a man identified as Robert Hadley. He knew from his own conversation with a witness that Hadley was driving a red Ford pickup. He knew from checking records that the red Ford pickup he saw turn into the lot and park was registered to Hadley. Under 22-2402, an officer is permitted to stop a person in a public place when the officer reasonably suspects that the person is committing, has committed, or is about to commit a crime. Officer Mazza reasonably suspected the man in the red Ford pickup of engaging in disorderly conduct. Even if this was a vehicle stop, under Kansas law, disorderly conduct is a misdemeanor crime against the public peace. K.S.A. 21-4101. He reasonably suspected that Hadley had committed a crime.

Hadley further contends that Officer Mazza lacked probable cause to arrest him because Mazza had not observed Hadley violate any traffic ordinances. In other words, his argument seems to be that the officer must testify that he observed the defendant's driving and that it was impaired in order to establish probable cause to arrest a suspect for driving under the influence.

K.S.A. 1996 Supp. 22-2401 provides, in part:

"A law enforcement officer may arrest a person under any of the following circumstances:

. . . .

"(c) The officer has probable cause to believe that the person is committing or has committed:

. . . .

(2) a misdemeanor, and the law enforcement officer has probable cause to believe that:

(A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested;

(B) the person may cause injury to self or others or damage to property unless immediately arrested."

With regard to the provisions of this statute, the court has stated: "In determining whether probable cause to arrest exists, all information in the officer's possession, fair inferences therefrom, and facts may be taken into consideration that might not be admissible on the issue of guilt." *State v. Strauch*, 239 Kan. 203, Syl. ¶ 2, 718 P.2d 613 (1986). Furthermore,

"[i]t is not necessary that the evidence giving rise to such probable cause be sufficient to prove guilt beyond a reasonable doubt, nor must it be sufficient to prove guilt is more probable than not. It is only necessary the evidence lead the officer to believe that guilt is more than a possibility, and it is well-established that the belief may be predicated in part upon hearsay information." *State v. Clark*, 218 Kan. 726, 731, 544 P.2d 1372, *cert. denied* 426 U.S. 939 (1976).

The record shows that the following facts, which are consistent with Hadley's being intoxicated, were known to Officer Mazza before he arrested Hadley: Hadley smelled strongly of alcohol, his speech was slurred, he almost fell getting out of his truck, his expression was wooden, his gaze was glazed, and he had difficulty trying to perform the field sobriety test. In addition, the officer knew that the police had received complaints from two retail establishments that a man named Robert Hadley was behaving in a disorderly manner, had been told by someone at the second retail establishment that Hadley was driving south in a red Ford pickup, and knew that the red Ford pickup he saw traveling south was registered to a man named Robert Hadley. These facts are sufficient to support the officer's belief that guilt was more than a possibility. Officer Mazza had probable cause to arrest Hadley. See *City of Dodge City v. Norton*, 262 Kan. 199, 936, P.2d 1356 (1997).

Moreover, evidence that a person is driving under the influence of alcohol more than likely will be irretrievably lost unless the per-

son is arrested immediately. Finally, concern for public safety is an important factor in the circumstances of this case. There was probable cause for Officer Mazza to believe that Hadley might injure himself or others unless arrested immediately.

Hadley's final argument is that the evidence was insufficient to support a rational factfinder's determination that he was guilty beyond a reasonable doubt.

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Knighten*, 260 Kan. 47, Syl. ¶ 1, 917 P.2d 1324 (1996).

It is Hadley's contention that, "[u]nder the city ordinance, which the defendant was convicted under, the City must prove that the defendant was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle." He did not provide the court with the text of the city ordinance or of any authority for his contention. He ignores evidence favorable to the prosecution and plays up inconsequential conduct of the arresting officer as if it were not only relevant but also dispositive. Moreover, he wants the court to treat his refusal to submit to a breath alcohol test as a significant gap in the City's proof. Contrary to defendant's assertions, a review of all the evidence in the light most favorable to the prosecution shows that a rational factfinder could have found him guilty beyond a reasonable doubt.

The decision of the Court of Appeals dismissing the appeal is reversed. The judgment of the district court is affirmed.