No. 79,701

STATE OF KANSAS, *Appellant*, v. WILLIAM B. NEUMAN, a/k/a
BRETT NEUMAN, *Appellee*.

(970 P.2d 988)

Opinion
filed December 11, 1998.

*Joe Shepack*, county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellant.

No appearance for appellee.

The opinion of the court was delivered by

ABBOTT, J.: The State appeals from the suppression of evidence and a pretrial dismissal of a DUI charge against defendant William B. Neuman, a/k/a Brett Neuman.

Ellsworth City Police Officer Larry Beagley was on duty and received a report from his 17-year-old son, who was working at a Pizza Hut in Ellsworth, that defendant had picked up an order, appeared intoxicated, and was driving a motor vehicle. Beagley was acquainted with defendant and was familiar with the vehicle which defendant drove. Beagley was stopped at a stop sign when he observed defendant's vehicle coming south on 156 Highway. Beagley testified that when defendant was about 50 to 75 yards north of the intersection, defendant "yanked or swerved to the right side of the highway."

Beagley turned onto 156 Highway and began to follow defendant's vehicle after it passed the intersection. He then decided to stop defendant's vehicle by activating his flashing lights. Defendant stopped his vehicle after Beagley had been following him for about one-half mile. While following defendant with his flashing lights on, Beagley observed defendant's vehicle cross the centerline and

veer onto the white line on the right side of the road. He also observed defendant throw a beer can out of his vehicle. Beagley testified that these actions were indications of a "possible drunk driver."

Field sobriety tests were administered and defendant failed the tests. He also failed a breath test.

Defendant filed a motion to suppress all evidence collected pursuant to the stop of his vehicle. Defendant contended that Beagley did not have reasonable or probable cause to arrest him. The trial court found Beagley did not have a reasonable, articulable suspicion "that criminal activity was afoot" when he made his decision to stop defendant's vehicle and activated the police car's emergency lights. Consequently, the trial court suppressed all the evidence gathered after Beagley activated his emergency lights. We hold this to be reversible error.

We have previously examined the question of whether a stop occurs when a law enforcement officer activates his or her flashing lights or whether it occurs when the officer actually stops the vehicle. In *State v. Guy*, 242 Kan. 840, 843, 752 P.2d 119 (1988), we held that the critical time when a law enforcement officer must have knowledge of facts, giving rise to a reasonable and articulable suspicion that defendant had committed, was committing, or was about to commit a crime, is at the time of the actual stop.

In *State v. Weaver*, 259 Kan. 844, 847, 915 P.2d 746 (1996), the facts are very similar to those in the case before us. In *Weaver*, the law enforcement officer did not have a reasonable suspicion of criminal activity to stop defendant's vehicle at the time that he activated the police car's emergency lights. When the officer activated the lights, defendant's vehicle sped up and a chase ensued. Defendant eventually stopped in a wheat field, after turning into a private driveway and driving through a yard and garden. In *Weaver*, we analyzed whether the stop occurred when the officer activated his flashing lights or when the defendant actually stopped his car. We held that the stop occurred when defendant submitted to the officer's authority and actually stopped his car. Thus, we allowed the officer's observations of defendant's conduct made before defendant submitted to the officer's authority to be considered

in determining whether the officer had reasonable suspicion to stop defendant.

The United States Supreme Court case of *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991), supports the precept that the critical time for determining whether reasonable suspicion for a stop exists is at the time of the actual stop. In *Hodari D.*, the State conceded it did not have a reasonable suspicion to pursue defendant (on foot) at the time the officer observed defendant discard rock cocaine. Defendant contended that the cocaine evidence should be suppressed as the fruit of an illegal seizure because he was seized when he saw the officer chasing him. The Court held that defendant was not seized until he submitted to the assertion of authority or the officer had made physical contact with the accused while attempting to seize him. The *Hodari D.* Court cited as "quite relevant" *Brower v. Inyo County*, 489 U.S. 593, 596, 103 L. Ed. 2d 628, 109 S. Ct. 1378 (1989). In *Brower*, police cars with flashing lights had chased decedent's car for 20 miles. This was clearly an adequate "show of authority," but the driver did not stop until his fatal crash with police blockade. Thus, the possibility that a seizure could have occurred during the course of the chase was not even considered a viable possibility in *Brower* because the "show of authority" did not produce the stop.

Here, at the time defendant stopped his vehicle and submitted to lawful authority, the officer had observed defendant "yank or swerve" his vehicle to the right, cross the center line, stray onto the white line on the right-hand side of the road, and throw a can which the officer believed to be a beer can out of the window of his vehicle. Thus, the trial court erred in not considering this evidence in determining whether the officer had a reasonable and articulable suspicion that defendant was committing the crime of driving under the influence at the time of the actual stop.

Reversed and remanded.